JOHN PEYSEN v. THE STATE.

No. 20017. Delivered January 25, 1939.

The opinion states the case.

*J. W. Ragsdale,* of Victoria, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

KRUEGER, JUDGE.—The offense is murder; the punishment assessed is death.

It appears from the state's testimony, as disclosed by the record, that during the night of September 24, 1937, appellant drove to an Humble Filling Station in the town of Palacios where deceased was working. He took all the money from the cash register in the station, robbed him of his watch and made him get into an automobile and drive a distance of approximately ten or twelve miles to Carranchua Bay. After they had driven half way across a bridge, appellant made the deceased get out of the car. He was getting under the steering wheel to drive away when the deceased grabbed him by the hand. When he did so, appellant shot him in one of his hands. The deceased then ran between the car and the bannisters of the bridge and was attempting to get hold of him when appellant shot him several more times. He then threw the body from the bridge into the bay where it was subsequently discovered by a fisherman.

Appellant addressed two objections to the court's charge which we have examined with much care and have reached the conclusion that they are, under the facts of the case, without merit.

The court's charge, in our opinion, is an excellent presentation of the law of the case.

By bills of exceptions numbers two and three it is shown that appellant offered two witnesses, Sailor and Barnett, by

whom he proved a good general reputation as a law-abiding citizen. The state, on cross-examination of each of these witnesses, and over the timely objection of appellant in each instance, was permitted to ask them if "they didn't know before Tim Williams was killed that the defendant was living in adultery with a woman—and if they didn't know, as a matter of fact, that he was spending his idle hours with a rough element in Palacios?"

In each instance the witness was required to answer the questions and both answered that such a fact was not personally known to him. It occurs to us that the learned trial judge fell into error in declining to sustain appellant's objection.

As a general rule evidence of good or bad character is restricted to the general reputation and does not extend to particulars. See Underhill Crim. Evid., 3d Ed., Sec. 141, p. 181.

However, for the purpose of testing the witness' knowledge on the matter about which he has testified, he might be asked as to any reports or rumors of specific facts and particular instances of conduct inconsistent with the character attributed to him by the witness which may have reached his ears. But the facts and conduct themselves are not allowed to be proved. In other words, bad character can not be shown on cross-examination by proof of specific acts of misconduct any more than it can on examination in chief. See Prater v. State, 104 Tex. Crim. Rep., 669; Shipley v. State, 131 Tex. Crim. Rep., 527; Adaire v. State, 119 Tex. Crim. Rep., 381.

It seems to us that it was especially improper for the district attorney to inquire of the witnesses if they did not know the defendant spent his idle time with a rough element in Palacios. There was no proof from any source whatever that the persons with whom he associated were a rough element. We know of no rule of evidence which authorizes an inquiry as to the character of defendant's associates and which would allow the state to parade their character before the jury to his prejudice. See Hosley v. State, 24 Tex. Crim. Rep., 35.

By bill of exception number four, appellant complains of the action of the trial court in permitting the district attorney on cross-examination of appellant, and over his timely objection, to ask him if, as a matter of fact, he had not been sleeping with Grace Little and sleeping with her as man and wife. The objection was overruled and he was required to answer and did answer as follows:

"I met Grace Little when I first went to Palacios. I never

lived with her at all by myself. I was not sleeping with her. I was not sleeping with her as man and wife, I was courting her. I guess when she told me to go out and rob someone, I felt I had to go out and rob them."

We are of the opinion that the learned trial court fell into error by declining to sustain the objection. It is obvious that the question, without regard to what the answer might have been, could not possibly have thrown any light on any issue of the offense for which he was on trial. It merely tended to establish an extraneous offense, to-wit, adultery, and was calculated to prejudice the jury against him. However, we do not wish to be understood as holding that the state could not show that when Grace Little told appellant to rob someone he felt he had to do so.

The matter complained of in bill of exception number five might well have been eliminated because appellant admitted having obtained the pistol with which the offense was committed at the home of his uncle. He had access thereto and was permitted to enter the same at his pleasure.

By bill of exception number nine, appellant complains of the following remarks by the prosecuting attorney in his opening argument to the jury:

"The defendant is by his confession shown to be guilty of a most cruel and horrible crime and one which in my judgment deserves the extreme penalty of the law. You said you had no scruples about inflicting the death penalty in a proper case and I tell you the people of Matagorda and Jackson Counties are expecting you to do your duty in this case and assess the defendant's punishment at death."

Appellant promptly objected to this argument and requested the court to instruct the jury not to consider the statement as to what the people of Matagorda and Jackson Counties were expecting at their hands. The objection was overruled and appellant reserved a bill of exception.

We think the learned trial court fell into error in overruling this objection. We have searched the record with much care but are unable to discover just how the learned counsel ascertained that the people of Matagorda and Jackson Counties were expecting the jury to assess the defendant's punishment at death. What the people of these counties expected at the hands of the jury should not have been used as a vehicle upon which to convey the appellant to the electric chair. We are of the opinion

that an appeal to the jury of this nature in order to secure a conviction was wrong, and this court will not sanction a verdict obtained by such methods. The jury should decide cases, not upon what the public expected them to do, but solely upon the weight and credibility of the evidence adduced upon the trial. The argument complained of was a departure from the record and an unsworn statement upon the part of the prosecuting attorney of what the people of Jackson and Matagorda Counties expected. It placed before the jury a fact not in evidence. Even if such was true, it ought not to be considered by them in determining the guilt of the party upon trial or the punishment to be assessed against him. In support of what we have said, see Crawford v. State, 15 Texas Crim. Rep. 501; Woolly v. State, 93 Tex. Crim. Rep., 384; Hazzard v. State, 111 Tex. Crim. Rep., 539; White v. State, 117 S. W. (2d), 450; Rodriguez v. State, 119 S. W. (2d), 1048; Edwards v. State, 77 S. W. (2d), 241.

All other matters complained of fail to reveal reversible error under the state of the record before us.

For the errors pointed out the judgment of the trial court is reversed and the cause remanded.

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.