**United States Court of Appeals**
**Fifth Circuit**

**F I L E D**

**August 9, 2005**

**Charles R. Fulbruge III**
**Clerk**

In the United States Court of Appeals

For the Fifth Circuit

_____

No. 03-51352

_____

BERNARD JAMES WARD, JR.,

                    Petitioner - Appellee-Cross-
                    Appellant,

                    versus

DOUG DRETKE, DIRECTOR, TEXAS DEPARTMENT OF CRIMINAL JUSTICE,
CORRECTIONAL INSTITUTIONS DIVISION,

                    Respondent - Appellant-Cross-
                    Appellee.

_____

Appeals from the United States District Court
For the Western District of Texas

_____

Before REAVLEY, HIGGINBOTHAM, and DeMOSS, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

Claiming that he had received ineffective assistance of counsel, Bernard Ward sought relief under 28 U.S.C. § 2254 from his conviction and sentence by a Texas court for indecency with a child, sexual assault, aggravated sexual assault, and possession of child pornography. The federal district court denied relief as to his conviction, but granted Ward's petition as to his sentence. Ward and the State filed cross-appeals, and the district court granted Ward's motion for COA. We hold that the district court correctly denied Ward's petition as to his conviction, but erred in

granting his petition as to his sentence.

I

In August 1993, Shannon Grant, then age 13, and his mother, Patti Love, moved into a house in Williamson County, Texas. The house was located next door to Bernard Ward, a single male. Ward befriended the family, and began working with Grant in an effort to improve his performance at school. He also encouraged Grant to stop abusing illegal drugs. As their friendship progressed, Ward began allowing Grant to spend the night at his house, purchased time for him on a web-based video game, and took him to Big Bend National Park. In addition to these innocuous activities, Ward allowed Grant to view pornographic videos. Grant also discovered a number of Playboy and Hustler magazines in Ward's attic. Roughly eighteen months into their friendship, Ward encouraged Grant to enter into a sexual relationship with him. The two engaged in sexual acts four or five times, after which Grant refused to participate further.

Roughly one month after these sexual encounters began, Ward leased a room in his house to Grant's best friend, Mike Carta. Carta was 18 years old at the time. Grant also introduced Ward to one of his friends from school, Adam Clouse. Clouse, who was twelve or thirteen years old at the time, began frequenting Ward's house along with Grant. Ward ultimately invited Clouse to participate in sexual activity with him, resulting in a number of sexual encounters over an eight-day period. Finally, Ward was

2

introduced to Chad Wright, another friend of Grant's. Ward made a number of passes at Wright, and attempted to initiate a sexual encounter. Wright quickly stopped the encounter and refused to participate in further sexual activity with Ward.

When Grant first met Ward, Ward owned a personal computer. Ward allowed Grant access to his personal computer on a regular basis. Eventually, Grant's use of Ward's computer became so excessive that Ward purchased Grant his own computer. Shortly thereafter, Ward discovered the internet and purchased a second new computer for his own use. Ward quickly became addicted to internet pornography, including child pornography and photographs of adult bestiality. He would download files containing pornographic pictures from the internet and store the files in folders marked "Animals, Boy/Girl, Female, Male, Male 10 to 13, Male 13 to 16, Male 7 to 10, Male in Briefs, and Celeb Boys."

Ward attempted to hide his use of internet pornography from the boys who frequented his home, but his furtiveness ultimately piqued the suspicions of Grant and Carta. One day while Ward was away, Grant used a password to log onto Ward's computer, and he and Carta accessed the files containing child pornography and photographs of bestiality. Rightly disgusted and disturbed, Carta reported Ward to the police. On September 24, 1996, Carta spoke with detectives Dan LeMay and Mary Ryle of the Round Rock Police Department and told them that he had observed child pornography on Ward's computer. The next day, LeMay and Ryle accompanied Carta to

3

Ward's house while Ward was away. Carta let them into the house, logged onto Ward's computer, and showed them the child pornography. At that point, LeMay and Ryle turned Ward's computer off and prepared a search warrant. They returned later that day and seized Ward's computer along with pornographic videos, magazines, condoms and K-Y Jelly. Ward was arrested on charges of possessing child pornography and was subsequently released after posting bond.

On September 27, Clouse went to the Round Rock Police Department and informed LeMay that Ward had sexually assaulted him on numerous occasions. Further investigation revealed the abuse of Grant and Wright. Ward was arrested again and indicted for possession of child pornography, indecency with a child, and multiple counts of sexual assault, and charged in a second indictment with multiple counts of aggravated sexual assault. Ward elected to have a jury assess punishment in both cases, and filed a motion to suppress evidence based upon an illegal search.

During this time, Ward's counsel, Hugh Lowe, devised a defense strategy aimed at securing either probation or the most lenient prison sentence possible. As part of this strategy, Lowe sought to have the cases against Ward consolidated into a single trial. The prosecutor agreed to consolidate in exchange for a guilty plea, a confession from Ward, and the name of Ward's testifying expert. Ward agreed to plead guilty, and Lowe disclosed the name of Ward's expert, Dr. Collier Cole, a psychologist specializing in the treatment of sex offenders. Dr. Cole had treated Ward for seven

4

months prior to his trial. Lowe also declined to pursue the earlier filed suppression motion.

In addition to taking these steps, Lowe determined that a posture of complete openness was the proper approach to take at Ward's sentencing. Prior to trial, Lowe had Ward prepare a lengthy written statement detailing his life up to the point of his incarceration. The statement included Ward's account of the charged offenses, a summary of his employment history, an account of his troubled childhood, and a summary of his use and sale of illegal drugs many years before trial. Lowe provided the written statement to Dr. Cole with the knowledge that it would be subpoenaed by the State.[1]

Pursuant to his openness strategy, Lowe also failed to object when the State sought to admit photographs of bestiality that were stored on Ward's computer. Neither did he object when the prosecutor solicited testimony that of the 4,100 probationers in Williamson County, not one was on probation granted by a jury for aggravated sexual assault.

Lowe did lodge an objection when, in response to testimony by Dr. Cole that it was not uncommon for a sex offender to be required to place a sign in his yard announcing his status, the prosecutor inquired whether a judge had ever required that the names,

---

[1] When the subpoena was served, Dr. Cole faxed a copy of it to Lowe. Lowe failed to respond to this fax and declined to claim attorney-client or work product privilege. The statement was copied and ultimately provided to the prosecution.

addresses and telephone numbers of jurors be placed on the sign if they gave the sex offender probation. However, Lowe opted not to request a curative instruction or move for a mistrial.

Lowe's passive approach continued throughout the State's closing argument, during which the prosecutor made a number of inflammatory remarks. The prosecutor quoted extensively from the Bible and discussed attitude about crime in Williamson County compared to that in other putatively less hospitable Texas counties. Lowe failed to object to these statements.

Following deliberation, the jury returned a verdict of four concurrent 20-year sentences, one 10-year sentence, three concurrent 60-year sentences for aggravated sexual assault, and a number of fines. Ward's sentence was affirmed on direct appeal, and his petition for discretionary review was denied.[2] On November 27, 2000, Ward filed a state habeas application alleging ineffective assistance of counsel. The State responded by filing a one-page general denial and an affidavit by Lowe. Ward's application was considered by the same judge who presided over his trial. After making findings of fact and conclusions of law, the judge recommended that relief be denied.[3] The Texas Court of Criminal Appeals denied relief without issuing a written opinion.

---

[2] *Ward v. State*, Nos. 03-97-657-CR & 03-97-658-CR, 1999 WL 125404 (Tex. App.--Austin Mar. 11 1999, pet. ref'd) (unpublished).

[3] *Ex parte Ward*, Nos. 96-624-K368A & 96-625-K368A (368th Dist. Ct., Williamson County, Tex., Mar. 9, 2001) (unpublished order).

Ward filed a petition under 28 U.S.C. § 2254 in the District Court for the Western District of Texas, Austin Division. The federal magistrate recommended that all relief be denied. Oral argument was then held before the district court. The court denied relief on Ward's claim that his trial counsel was ineffective in failing to challenge the search and seizure of his computer files prior to his guilty plea, finding that this claim was barred because he had not made a showing that his plea was involuntary.[4]

The court granted relief, however, on Ward's claim that his trial counsel was ineffective at sentencing. The court identified five instances of ineffectiveness by Lowe: (1) his failure to request a curative instruction or move for a mistrial after the prosecutor queried whether the names of jurors had ever been placed on a sign in a sex offender's front yard in response to a sentence of probation; (2) his failure to make efforts to keep the portion of Ward's statement regarding unadjudicated drug offenses out of evidence; (3) his failure to object to the introduction of photographs of bestiality; (4) his failure to object to testimony regarding the absence of probationers in Williamson County granted probation by a jury after being convicted of aggravated sexual assault; and (5) his failure to object to improper jury argument by the prosecutor.[5] The court found that there was a reasonable

---

[4] *Ward v. Cockrell*, No. A-01-CA-354-SS, at 8 (W.D. Tex. Sept. 12, 2003) (unpublished order).

[5] *Id.* at 9-18.

7

probability that but for these errors, Ward's sentence would have been different.

Ward filed an unsuccessful motion to alter or amend the judgment. The State filed a notice of appeal from the judgment, and Ward filed a motion for COA and a notice of appeal from the order denying his motion to alter or amend. Ward's motion for COA was granted by the district court.

II

Under 28 U.S.C. § 2254, Ward is entitled to federal habeas relief only if he can demonstrate that the state court's adjudication of his ineffective assistance claims

> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.[6]

A state court's adjudication constitutes an "unreasonable application" when the court identifies the correct governing legal principle from Supreme Court's decisions, but applies that principle to the facts of a particular case in an objectively unreasonable way.[7]

---

[6] 28 U.S.C. § 2254(d)(1)-(2).

[7] *See Rompilla v. Beard*, 125 S. Ct. 2456, 2462 (2005); *Wiggins v. Smith*, 539 U.S. 510, 519-20 (2003); *Williams v. Taylor*, 529 U.S. 362, 409-13 (2000) (Opinion of O'Connor, J.).

8

We examine the federal habeas court's factual findings for clear error and determinations of law *de novo*.[8]  An ineffective assistance of counsel claim "presents a mixed question of law and fact."[9]  "When examining mixed questions of law and fact, we also utilize a *de novo* standard by independently applying the law to the facts found by the district court, as long as the district court's factual determinations are not clearly erroneous."[10]

Reviewing the state habeas court's rejection of Ward's state petition, the district court found that Ward was not entitled to relief on his ineffective assistance claim with respect to his guilty plea, but held that Ward was entitled to relief on his claim that Lowe was ineffective at sentencing.  We address these issues in turn.

A

Ward contends that the district court erred when it rejected his claim that Lowe was ineffective for abandoning a meritorious motion to suppress evidence of child pornography seized after an illegal search of his computer.  Ward claims that had he been properly informed of the law governing search and seizure, he would not have pled guilty and would have pressed Lowe to pursue the suppression motion.

---

[8] *See Bosley v. Cain*, 409 F.3d 657, 662 (5th Cir. 2005); *Ramirez v. Dretke*, 396 F.3d 646, 649 (5th Cir. 2005).

[9] *Riley v. Dretke*, 362 F.3d 302, 305 (5th Cir. 2004).

[10] *Ramirez*, 396 F.3d at 649.

Our review of Ward's ineffective assistance of counsel claim is governed by the familiar test of *Strickland v. Washington*: deficient performance and prejudice.[11] To prove deficient performance, "a petitioner must demonstrate that counsel's representation 'fell below an objective standard of reasonableness.'"[12] We must "accord substantial deference to counsel's performance, applying the strong presumption that counsel performed adequately and exercised reasonable professional judgment."[13] To establish prejudice, a petitioner must "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome."[14]

When a petitioner challenges the voluntariness of his guilty plea entered pursuant to the advice of counsel on ineffective assistance grounds, he must establish that his counsel's advice fell below the range of competence demanded of an attorney in a

---

[11] 466 U.S. 668, 687 (1984). We note that the state habeas court applied *Strickland* in assessing Ward's state habeas petition. See Hernandez v. State, 988 S.W.2d 770, 772 (Tex. Crim. App. 1999) (holding that *Strickland* applies to ineffective assistance claims raised in state habeas actions).

[12] *Wiggins*, 539 U.S. at 521 (quoting *Strickland*, 466 U.S. at 688).

[13] *Titsworth v. Dretke*, 401 F.3d 301, 310 (5th Cir. 2005) (citing *Strickland*, 466 U.S. at 689).

[14] *Strickland*, 466 U.S. at 694.

10

criminal case.[15]  Further, he must show prejudice by establishing that "but for his counsel's alleged erroneous advice, he would not have pleaded guilty but would have insisted upon going to trial."[16] This assessment will turn partially on "a prediction of what the outcome of a trial might have been."[17]

Ward urges that Lowe rendered ineffective assistance by failing to adequately investigate whether the search and seizure of Ward's computer files was illegal under the Fourth Amendment and Texas law.  Ward asserts that had Lowe provided minimal legal investigation, he would have discovered that all evidence yielded by the search, including statements by the boys regarding the sexual assaults, was inadmissible.  Had Lowe informed him of this, Ward claims that he would have directed Lowe to "push the suppression motion to the limit, more likely than not securing a dismissal of all charges."

We are not persuaded.  The record contains no indication that Lowe failed to conduct an adequate investigation into the law and facts relevant to the suppression motion.  In addition, Ward cannot establish that Lowe performed in a deficient manner by failing to seek suppression of evidence related to the sexual assault and

---

[15] *See Hill v. Lockhart*, 474 U.S. 52, 56 (1985); *Armstead v. Scott*, 37 F.3d 202, 206 (5th Cir. 1994).

[16] *Armstead*, 37 F.3d at 206; *see Carter v. Collins*, 918 F.2d 1198, 1200 (5th Cir. 1990); *Uresti v. Lynaugh*, 821 F.2d 1099, 1101 (5th Cir. 1987) (citing *Hill*, 474 U.S. at 58-59).

[17] *Armstead*, 37 F.3d at 206 (citing *Hill*, 474 U.S. at 56-58).

11

aggravated sexual assault charges.[18]  We have held that "counsel's failure to move to suppress evidence, when the evidence would have been suppressed if objected to, can constitute deficient performance."[19]  Assuming *arguendo* that the search and seizure precipitated by Carta's actions was unlawful, Ward would have been unable to suppress evidence that he committed multiple sexual assaults against Grant and multiple aggravated sexual assaults against Clouse because this evidence was not obtained as a result of the allegedly unlawful police activity.

Ward argues that suppression of Clouse and Grant's testimony would have been appropriate under the "fruit of the poisonous tree" doctrine, which provides that "all evidence derived from the exploitation of an illegal seizure must be suppressed, unless the government shows that there was a break in the chain of events sufficient to refute the inference that the evidence was a product of the Fourth Amendment violation."[20]  The test for determining

---

[18] In his brief, Ward argues that successful prosecution of the suppression motion would have resulted in the dismissal of evidence supporting *all* charges against him.  This argument presupposes that the suppression motion was equally meritorious with respect to evidence of child pornography, sexual assault, indecency with a child, and aggravated sexual assault.

[19] *Martin v. Maxey*, 98 F.3d 844, 848 (5th Cir. 1996); *see Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986) (holding that when ineffectiveness claim is grounded on counsel's failure to litigate a Fourth Amendment claim, "the defendant must also prove that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence in order to demonstrate actual prejudice").

[20] *United States v. Portillo-Aguirre*, 311 F.3d 647, 658 (5th Cir. 2002); *see United States v. Rivas*, 157 F.3d 364, 368 (5th Cir. 1998); *United States v. Caldwell*, 750 F.2d 341, 343 (5th Cir. 1984); *see also Thornton v. State*, 145 S.W.3d 228, 232 (Tex. Crim App. 2004) (discussing "fruit of the poisonous tree" doctrine).

whether evidence is inadmissible as fruit of the poisonous tree is "whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint."[21]  Evidence that would otherwise be suppressible as fruit of the poisonous tree is purged of the primary taint "if it derives from an independent source, if the link to the illegally secured evidence is attenuated, or if it would inevitably have been discovered without the aid of the illegally obtained evidence."[22]

When Ward was first arrested following the seizure of materials from his house, he was charged only with possessing child pornography.  Ward did not disclose that he had been involved in sexual relationships with minor children.  Two days after the search, Adam Clouse was taken by his father, Chuck Clouse, to the Round Rock Police Station where he disclosed that he had been sexually abused by Ward.  An arrest warrant was prepared and Ward was re-arrested and charged with aggravated sexual assault.  Importantly, there is no indication that Clouse's revelation was the product of police exploitation of evidence seized from Ward's house.

Even assuming that Clouse's disclosure was linked to the

---

[21] *Wong Sun v. United States*, 371 U.S. 471, 488 (1963) (internal quotation marks and citation omitted).

[22] *United States v. Singh*, 261 F.3d 530, 535 (5th Cir. 2001).

search and seizure, the link was sufficiently attenuated to dissipate any taint. Clouse's decision to come forward, while possibly attributable to Ward's arrest in a tangential way,[23] was the product of his own free will.[24] Although only two days elapsed between the search and seizure and Clouse's disclosure, the record indicates that his decision to report Ward was in no way "coerced or even induced by official authority."[25] As a result, suppression of his testimony would have been inappropriate even if Ward's motion had been pursued by Lowe and a successful outcome achieved.

Likewise, suppression of Grant's testimony would have been improper because Grant also chose to voluntarily report that he had been sexually abused by Ward. At trial, Grant testified that he initially denied having been abused after news of Ward's arrest

---

[23] Presumably, the disclosure constitutes a "fruit" of the search because Ward's arrest emboldened Clouse to come forward when he otherwise would not have done so. This hypothesis is speculative in nature, and lacks a solid factual basis in the record. Nonetheless, it is the only plausible link between the search and the discovery of the sexual abuse committed by Ward.

[24] The Supreme Court has observed:
Witnesses are not like guns or documents which remain hidden from view until one turns over a sofa or opens a filing cabinet. Witnesses can, and often do, come forward and offer evidence entirely of their own volition. And evaluated properly, the degree of free will necessary to dissipate the taint will very likely be found more often in the case of live-witness testimony than other kinds of evidence.
*United States v. Ceccolini*, 435 U.S. 268, 276-77 (1978); *see United States v. Butts*, 729 F.2d 1514, 1528 (5th Cir. 1984) (among the factors considered in making the attenuation determination is "whether the testimony was the act of the witness=s own free will").

[25] *Ceccolini*, 435 U.S. at 279. In his trial testimony, Clouse stated that he had been "tricked" by Detective LeMay into disclosing that he had been sexually abused when LeMay stated that Ward had already confessed to the abuse. This testimony suggests at most that LeMay may have employed deception in order to encourage Clouse to speak openly once he came forward.

first came out.  Grant testified that he eventually decided to go to the police with his story after he admitted to Chuck Clouse that he had been abused.  As with Adam Clouse, there is no evidence that Grant's decision to report Ward's illegal behavior was the result of police exploitation of evidence seized from Ward's house.

Given that Lowe's failure to challenge the admissibility of Clouse and Grant's testimony was not objectively unreasonable, Ward cannot establish that his guilty plea was entered involuntarily as a result of his counsel's ineffective assistance.  Even if Lowe had succeeded in suppressing evidence of child pornography taken from Ward's computer, Ward still would have faced two separate indictments charging, *inter alia*, multiple counts of sexual assault and aggravated sexual assault.  In his affidavit, Lowe stated that one of his overriding strategic goals was that of limiting Ward's exposure to "multiple trials and stacked sentences."  The prosecutor agreed to consolidate the cases if Ward would plead guilty and confess.  This same pressure to plead guilty would have been present had evidence of child pornography been excised from the case.  Ward has offered no argument or evidence as to any countervailing considerations which would have altered his decision to plead guilty upon suppression of the child pornography alone.  Accordingly, we agree fully with the district court that Ward has failed to demonstrate that his guilty plea was involuntary.

B

15

We now turn to the State's argument that the district court erred in holding that Ward was prejudiced by his counsel's ineffective assistance at sentencing. As before, our analysis is guided by the performance and prejudice test of *Strickland*.

1

The district court identified five separate instances of defective assistance rendered by Lowe at sentencing, all of which are contested by the State. We will take up each instance in turn.

a

The State first argues that the district court erred in holding that Lowe acted in an objectively unreasonable manner when he failed to request a curative instruction and seek a mistrial after the prosecutor made what the court described as "threats to the jury."[26]

When being questioned by Lowe about various conditions that may be placed on sex offenders who are given probation, Dr. Cole opined that "[t]here have been several . . . cases around the State where Judges will require a notice on [the sex offender's] door or a sign in the yard, something of that nature, again to warn the community." During cross-examination, the prosecutor asked Dr. Cole if he had "ever had a Judge that would require not only the sign be put out there but the names and addresses and phone numbers of the jury members that gave him probation" be placed on the sign.

---

[26] *Ward v. Cockrell*, No. A-01-CA-354-SS, at 9.

16

Before Dr. Cole could respond, Lowe interposed an objection, and the court asked the prosecutor to restate the question. The prosecutor then inquired whether, in cases where juries had recommended probation for sex offenders and probation was given, the judge had ordered that the "names of the jurors and their addresses and telephone numbers" be listed on the sign. Lowe again objected and his objection was sustained. Lowe did not request a curative instruction or seek a mistrial.

During a subsequent recess, Lowe informed the court that he was having "more and more trouble about the juror's names on the signs," and requested a curative instruction. He also announced his intention to seek a mistrial if the request was granted. The court denied the request as untimely, and stated, "I certainly would have [issued an instruction], given the opportunity to at the time that the objection was made; but there's been an awful lot of testimony since then."

In his affidavit, Lowe explained that he did not seek a curative instruction because doing so "would only remind the jury of the question," and he "did not believe that an instruction to disregard would be any more effective than the trial court's decision to sustain" his objection. Further, he stated that he did not seek a mistrial because he believed that Ward "had received a fair trial and would not get any better opportunity to present his case." Lowe claimed that a mistrial would have allowed the prosecutor time to better prepare for Dr. Cole's testimony and to

17

hire a rebuttal expert.  In addition, Lowe feared that a mistrial would have resulted in the loss of favorable testimony from Patti Love and Shannon Grant, both of whom were viewing Ward in an increasingly negative light.

In reviewing Ward's habeas application, the state habeas court found that Lowe's failure to request a curative instruction was part of a "deliberately formed strategy to avoid bringing the question again to the attention of the jury."[27]  The court then rejected Ward's ineffective assistance challenge, noting that it was "based almost entirely on the premise of using a different trial strategy designed to object to everything and challenge the State's evidence."[28]  "Such hindsight," the court concluded, "is not permitted in evaluating a claim of ineffective assistance of counsel."[29]

We have observed that a "conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness."[30]  Under

---

[27] *Ex parte Ward*, Nos. 96-624-K368A & 96-625-K368A, at 8.

[28] *Id.*

[29] *Id.*

[30] *Martinez v. Dretke*, 404 F.3d 878, 885 (5th Cir. 2005) (internal quotation marks and citations omitted); *see United States v. Jones*, 287 F.3d 325, 331 (5th Cir. 2002) ("'Informed strategic decisions of counsel are given a heavy measure of deference and should not be second guessed.'" (quoting *Lamb v. Johnson*, 179 F.3d 352, 358 (5th Cir. 1999); *Yohey v. Collins*, 985 F.2d 222, 228 (5th Cir. 1993) ("Given the almost infinite variety of possible trial techniques and tactics available to counsel, this Circuit is careful not to second guess

18

this indulgent standard, we cannot say that Lowe's strategic decision to avoid seeking a mistrial was constitutionally deficient. In deciding whether to seek a mistrial, Lowe was required to balance the harm caused by the prosecutor's improper question against the legitimate possibility that a new trial would present less propitious prospects for his client. Lowe opted to cast his lot with a jury that, although possibly feeling threatened, had heard favorable testimony from Love and Grant, rather than risk retrying the case with Love and Grant appearing as hostile witnesses. This decision, while debatable, was not objectively unreasonable.

Lowe's failure to seek a curative instruction after his objection was sustained, however, cannot be considered an objectively reasonable tactical decision based on an informed trial strategy. After hearing the prosecutor ask two consecutive questions suggesting that their names, addresses and telephone numbers could be placed on a sign in Ward's front yard if they sentenced him to probation, the jury would have been understandably anxious to learn the answer. What they received following Lowe's objections was silence. It was incumbent upon Lowe, whose trial strategy was directed toward securing a sentence of probation for Ward, to take some action to dispel the notion that the court would, in effect, sentence the jury to public shame, ridicule and

legitimate strategic choices.").

19

disapprobation if it provided Ward with his desired outcome. Securing an instruction to disregard, while not fully mitigating the effect of the prosecutor's thinly veiled threat, would have provided the jury with a solid basis for proceeding without fear of state-imposed repercussions. The state habeas court's decision to the contrary was an objectively unreasonable application of the law to the facts.

b

The State also challenges the district court's conclusion that Lowe offered ineffective assistance when he allowed evidence of Ward's unadjudicated drug offenses to reach the jury. Before trial, Lowe requested that Ward prepare a written autobiography of his life up to the point of his arrest and incarceration. Ward prepared a detailed statement nearly forty pages in length in which he recounted, *inter alia*, his involvement with illegal drugs, including cocaine, marijuana, and methamphetamine, roughly ten years before his arrest.

Upon receipt of this written statement, Lowe decided that it should be used by Dr. Cole and be heard by the jury. Lowe disclosed the statement to Dr. Cole, and did not seek to invoke attorney client or work product privilege when the report was subpoenaed. At trial, the prosecutor offered Ward's statement into evidence without objection from Lowe. Lowe referenced the statement when he announced his strategy to the jury, stating:

20

> You will hear also from Ben Ward himself. Ben is here asking you for consideration, and in return for that he's bringing you complete honesty. He has written a report for Dr. Cole--it's in evidence[]--where he confesses to every sin he's ever committed. He's here to answer any questions the State might have and to give you whatever information that you might need.

Ward's involvement with illegal drugs was subsequently referenced numerous times during the course of the trial, including his admission to having been both a user and a dealer.

Lowe defended his decision to disclose the statement and not seek exclusion of Ward's prior uncharged drug offenses on grounds that a posture of complete openness would bolster the credibility of Dr. Cole and convince the jury that Ward was "ready for treatment." He asserted that Ward understood and agreed with this strategy. The state habeas court found this strategy reasonable, noting that Lowe made frequent use of Ward's statement, including references to his prior involvement with drugs, to demonstrate that he was "good candidate for treatment and rehabilitation."[31]

While we do not quarrel with Lowe's strategic decision to be open and honest with the jury, we conclude that Lowe provided ineffective assistance in allowing the jury unabated access to information about drug offenses remote from and unrelated to the crimes for which Ward was indicted. Lowe's strategy of openness called for Ward to acknowledge his guilt and take responsibility for his past failings in such a way that the jury would be

---

[31] *Ex parte Ward*, Nos. 96-624-K368A & 96-625-K368A, at 6-7.

21

convinced that he was a good candidate for rehabilitation, thereby increasing his chances for probation. This goal could have been accomplished by having Ward testify openly about his sexual crimes without placing before the jury evidence of past drug involvement that had no relevance to the charged offenses.

We also find unpersuasive the State's argument that any objection by Lowe to the admission of evidence regarding Ward's involvement with drugs would have been futile. Texas law provides that at the punishment stage of a criminal trial

> evidence may be offered by the state and the defendant as to any matter the court deems *relevant to sentencing*, including but not limited to . . . evidence of an extraneous crime or bad act that is shown beyond a reasonable doubt by evidence to have been committed by the defendant or for which he could be held criminally responsible, regardless of whether he has previously been charged with or finally convicted of the crime or act.[32]

The Texas Court of Criminal Appeals has held that relevancy determinations at sentencing should be based on an analysis of "what is helpful to the jury in determining the appropriate sentence in a particular case."[33] The Court has explained that these determinations are "a function of policy rather than a

---

[32] TEX. CRIM. PROC. CODE ANN. art. 37.07, § 3(a)(1) (Vernon Supp. 1997) (emphasis added).

[33] *Rogers v. State*, 991 S.W.2d 263, 265 (Tex. Crim. App. 1999). In making this determination, the Court has held that, while not a "perfect fit," Texas Rule of Evidence 401 is "helpful" in determining whether evidence is admissible at sentencing. *See Mendiola v. State*, 21 S.W.3d 282, 285 (Tex. Crim. App. 2000) (citing *Rogers*, 991 S.W.2d at 265)). Rule 401 provides that "'[r]elevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." TEX. R. EVID. 401.

22

question of logical relevance."[34] Pertinent policy considerations include "giving complete information for the jury to tailor an appropriate sentence for a defendant; the policy of optional completeness; and admitting the truth in sentencing."[35] Even if a fact is found to be relevant to the determination of a defendant's sentence, it may still be excluded on grounds that "its probative value is substantially outweighed by the danger of unfair prejudice."[36]

Here, evidence that Ward had used and sold illegal drugs roughly ten years before his arrest for sex crimes was not relevant to the jury's sentencing determination. At no point was Ward charged with any drug crimes,[37] and no suggestion was raised at trial that Ward's sexual misconduct was related to his past drug abuse. Ward's involvement with illegal drugs was separate and unrelated to his sex crimes, and was therefore not helpful to the

---

[34] *Sunbury v. State*, 88 S.W.3d 229, 233 (Tex. Crim. App. 2002).

[35] *Id*. at 233-34.

[36] TEX. R. EVID. 403; *see Rogers*, 991 S.W.2d at 266 (applying Rule 403 in sentencing context); *Rodriguez v. State*, 163 S.W.3d 115, 119 (Tex. App.--San Antonio 2005, pet. filed June 8, 2005) ("[A]dmissibility of punishment phase evidence that the trial court deems relevant is still subject to a rule 403 analysis." (citing *Rogers*, 991 S.W.2d at 266-67)); *Fowler v. State*, 126 S.W.3d 307, 311 (Tex. App.--Beaumont 2004, no pet.) (applying rule 403 sentencing context); *Contreras v. State*, 59 S.W.3d 362, 365 (Tex. App.--Houston [1st Dist] 2001, no pet.) (same).

[37] Texas courts have held that evidence of prior sentences imposed for past convictions is relevant to sentencing because such evidence informs the jury as to the type of sentences that have proved insufficient in deterring individual defendants from committing future crimes. *See Sunbury*, 88 S.W.3d at 235; *Rogers*, 991 S.W.2d at 266. These cases are distinguishable given that Ward was never charged for his prior involvement with drugs.

23

jury in making its sentencing determination.

In addition, admission of evidence regarding Ward's involvement with drugs was improper because any probative value it may have had with respect to determining the appropriate length of Ward's sentence was far outweighed by the danger that it would give rise to unfair prejudice. Texas courts have held that "unfair prejudice" refers to "an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one."[38] The admission of evidence establishing that Ward had used and sold illegal drugs roughly a decade before committing aggravated sexual assault gave rise to a risk that the jury would attempt to punish Ward for both his drug offenses and his sex crimes when determining his sentence. The probability that such evidence would have been excluded is high.

The State's argument that evidence of Ward's involvement with drugs would have been necessarily admissible as part of the factual basis for Dr. Cole's expert testimony is also misplaced. Under Texas law, a testifying expert may be "required to disclose on cross-examination" the facts or data underlying her opinion.[39] However, expert "testimony may be admissible while at the same time the underlying facts or data [supporting her opinion] are

---

[38] *Cohn v. State*, 849 S.W.2d 817, 820 (Tex. Crim. App. 1993) (internal quotation marks and citation omitted); *see Erazo v. State*, 144 S.W.3d 487, 501-02 (Tex. Crim. App. 2004); *Newbury v. State*, 135 S.W.3d 22, 43 (Tex. Crim. App. 2004).

[39] TEX. R. EVID. 705(a).

24

inadmissible."[40]   When the facts or data underlying an expert's opinion are otherwise inadmissible, "the court shall exclude the underlying facts or data if the danger that they will be used for a purpose other than as explanation or support for the expert's opinion outweighs their value as explanation or support or are unfairly prejudicial."[41]   Because evidence of Ward's involvement with drugs was inadmissible, there is a good possibility that an objection by Lowe would have been sustained even though it constituted "facts or data" underlying Dr. Cole's expert opinion testimony.[42]   Because the evidence related to past criminal conduct for which Ward was never charged, the jury could easily have considered it not for the purpose of ascertaining Ward's propensity for rehabilitation, but rather as an additional basis for assessing a lengthy prison sentence.

In short, we find that the district court did not err in holding that Lowe rendered ineffective assistance by allowing without objection the presentation of evidence relating to Ward's past involvement with drugs.

c

The State next argues that the district court erred in holding

---

[40] *Boswell v. Brazos Elec. Power Coop., Inc.*, 910 S.W.2d 593, 602 (Tex. App.--Fort Worth 1995, writ denied).

[41] TEX. R. EVID. 705(d).

[42] *See Resendez v. State*, 112 S.W.3d 541, 544-45 (Tex. Crim. App. 2003) (holding that a trial judge did not abuse his discretion when he excluded photographs under Rule 705(d) because they were inadmissible under Rule 403 and were likely to be used for purposes other than supporting the expert's opinion).

that Lowe performed in a deficient manner by failing to object to the admission of images of bestiality seized from Ward's computer. In his affidavit, Lowe stated that he did not object to admission of these grotesque images because he believed them to be admissible "for impeachment of our strategy of openness" as well as constituting background for Dr. Cole's testimony. The state habeas court did not directly address the admission of this evidence.

We can identify no objectively reasonable basis in this case for permitting the sentencing jury to view the images of adult bestiality. The images did not form part of the factual basis for the charges to which Ward plead guilty, and had no relevance to the jury's sentencing determination apart from demonstrating the depths of depravity to which Ward had sunk. Even if the evidence were relevant in some tangential way to the determination of Ward's sentence, we believe it highly probable that considerations of unfair prejudice would have sufficed to keep this evidence from the jury.[43]

Further, we reject the State's argument that Ward "opened the door" to the bestiality images by purporting to be open and honest with the jury.[44] However, to the extent that Ward may have opened

---

[43] *See United States v. Harvey*, 991 F.2d 981, 995-96 (2d Cir. 1993) (mere description of "X-rated" videos in defendant's possession containing images of "gross acts involving human waste, and people engaging in bestiality and sadomasochism" was "so prejudicial that it denied [defendant] his right to a fair trial").

[44] *See Perry v. State*, 158 S.W.3d 438, 442 (Tex. Crim. App. 2004) (defendant may open the door to otherwise inadmissible impeachment evidence); *Theus v. State*, 845 S.W.2d 874, 878 (Tex. Crim. App. 1992) (same).

26

the door, the trial court would have been within its discretion to exclude the images as unfairly prejudicial.[45] The district court did not err in holding that Lowe was ineffective for failing to object to this evidence.

d

The State next contests the district court's holding that Lowe was ineffective for failing to object to testimony by the assistant director for the Williamson County probation department that of the 4,100 probationers in Williamson County, not one was "currently being supervised on probation for aggravated sexual assault that was granted by a jury."[46] Lowe defended his decision not to object on grounds that he "did not want to give the jury any impression that Mr. Ward was trying to hide anything." In its findings of fact, the state habeas court found that Lowe chose not object to the question based on his "deliberately formed . . . strategy of giving the appearance to the jury that [Ward] was being completely open."[47]

On appeal, the State argues that Lowe "could reasonably have withheld objecting to minimize the importance of the testimony." We find this argument, as well as the state habeas court's

_____

[45] *See Martinez v. State*, 17 S.W.3d 677, 687 (Tex. Crim. App. 2000) (trial court is within its discretion to exclude evidence under Rule 403 when defendant has otherwise opened the door to its admission).

[46] The record reveals that on redirect examination, the prosecutor elicited identical testimony from the same witness. Lowe objected on grounds that the question had been "asked and answered." The objection was overruled.

[47] *Ex parte Ward*, Nos. 96-624-K368A & 96-625-K368A, at 8.

27

reasoning, unpersuasive and an unreasonable application of *Strickland.* Beyond being irrelevant to the proper determination of Lowe's sentence, this testimony was prejudicial to Ward in that it invited the jury to base its sentencing decision on an improper basis.[48] Permitting the State to present this evidence without objection was unreasonable, and cannot be recast as a "strategic decision" given that the evidence was wholly unrelated to Ward's background or his readiness for treatment. In its brief, the State acknowledges this reality by conceding that Lowe's "decision not to object may, in hindsight, have been deficient." We find no error in the district court' holding on this point.

e

In its final challenge, the State argues that the district court erred when it held that Lowe was ineffective for failing to object to several statements made by the prosecutor during closing argument, including a recitation from the Bible and a comparison of Williamson County attitudes toward crime to those in Galveston and the Rio Grande Valley. Discussing Ward's alleged turn to religion, the prosecutor observed:

> We heard some talk from [Ward's] mom . . . that Ben had asked for forgiveness, had gone to confession, that sort of thing. . . . As I remember it, and I don't have the actual chapter and verse . . . [b]ut as I remember it, when Christ was crucified there were two thieves on each

---

[48] *Cf. Borjan v. State*, 787 S.W.2d 53, 56 (Tex. Crim. App. 1990) ("The State may not . . . argue that the community or any particular segment of the community expects or demands either a guilty verdict or a particular punishment.").

28

side of Christ, and they asked forgiveness.  They asked what they should do, and he told them how that they could get forgiveness.  They did that . . . and Christ said, "You're forgiven."  And I think that Ben Ward can and probably has been forgiven.  But Christ didn't take the thief off the tree.  Christ let the thief pay for the crime that he committed, and I think that's important.

The prosecutor then observed that "Christ thought children were really something else," and quoted the following passage from the book of Matthew: "But whosoever [sic] shall offend one of these little ones which believe in me, it were better for him that a millstone were hanged about his neck and that he were drowned in the depth of the sea."[49]

The prosecutor also recounted Dr. Cole's response to a question regarding the percentage of sex offenders in Galveston County that receive probation:

[H]e got to throwing around, "It's pretty big, maybe a third."  I bet my paycheck it wasn't [a] third.  And if it is, then maybe that's what's wrong with Galveston County because there's a lot of Galveston County that's not that beach, folks, that we see.  You go down there and look at the ghettos and the problems that they have in Galveston County proper and in Galveston itself.  Get off that beach and get into their town, and you'll realize that it isn't Williamson County.  Maybe that's what the deal is.  Maybe their juries do give probation.  But I've got news for you.  It's not the type of thing that ought to be happening in Williamson County.

Turning to Ward's involvement with drugs, the prosecutor noted:

And then he gets into a situation where he begins to use marijuana and used it heavily daily and then begins to sell marijuana.  And yes, we have lawyers coming up here all the time from the valley saying what are you people doing trying to send these people to the pen for just a

---

[49] *See Matthew* 18:6 (New King James).

29

few pounds of marijuana, because they think that's chicken feed, you know? Well, we don't. We think in our county if you want to sell a few pounds of marijuana, you get to go to the pen. Is that something bad? Do ya'll like living where you're living? Do ya'll want to live in the valley-type situation where several hundred pounds of marijuana may be an offense? Or do you like living where you are and raising your kids where you are because of the fact that the law enforcement and the good people of this community tow [sic] the line and expect others to tow [sic] the line?

In his affidavit, Lowe justified his failure to object to the prosecutor's reference to religion on grounds that it was invited by testimony about Ward's return to faith. Further, Lowe claimed that he opted not to object to the prosecutor's reference to drug offense sentences in the Valley because it was "a fair comment on our arguments that Mr. Ward should get probation." The state habeas court accepted this explanation, noting: "In deciding not to object to the prosecutor's final arguments, Lowe formed the opinion that the arguments were not objectionable or not harmful enough to draw the jury's attention with an objection. He deliberately made a strategic decision not to object."[50]

We conclude that the state habeas court unreasonably applied *Strickland* with respect to Ward's claim that Lowe should have challenged the prosecutor's recitation of the millstone passage. Texas law provides that "proper jury argument must fall within one of the following categories: (1) summary of the evidence; (2) reasonable deduction from the evidence; (3) in response to argument

---

[50] *Ex parte Ward*, Nos. 96-624-K368A & 96-625-K368A, at 8.

of opposing counsel; and (4) plea for law enforcement."[51]   Under this standard, the prosecutor's reference to the "millstone passage" was improper because it reached beyond the record evidence and encouraged the jury to base its sentencing determination on notions of divine retribution.  The State posits that this argument was made in response to testimony by Ward's mother that, following his arrest, Ward had turned back to his Catholic faith, attended confession, and sought absolution for his sins.  The context of this testimony reveals that it was aimed at bolstering Ward's claim that he was penitent and ready for treatment.  Importantly, Ward did not seek to persuade the jury that his spiritual contrition necessarily required temporal absolution.  Argument that Ward was not ready for treatment, or perhaps that his spiritual reawakening was opportunistic, would have been the proper rejoinders.  However, suggesting that Ward's embrace of faith dictated that he be judged by Biblical standards of justice was improper, and an objection to this suggestion was necessary in order to mitigate its highly prejudicial effect.[52]

---

[51] *Borjan v. State*, 787 S.W.2d at 55 (citing *Madden v. State*, 721 S.W.2d 859, 862 (Tex. Crim. App. 1986); *Alejandro v. State*, 493 S.W.2d 230 (Tex. Crim. App. 1973)).

[52] *See Oakley v. State*, 68 S.W.2d 204, 207 (Tex. Crim. App. 1934) (noting that prosecutor's citation of the millstone passage and associated religious argument "was a direct appeal to religious prejudice and calculated to arouse the emotions" of the jury); *Commonwealth v. Brown*, 711 A.2d 444, 458 (Pa. 1998) (prosecutor's invocation of millstone passage held to be reversible error); *Long v. State*, 883 P.2d 167, 177 (Okla. Crim. App. 1994) (prosecutor's quotation of the millstone passage at penalty phase was "rank misconduct"); *cf. Arnett v. Jackson*, 393 F.3d 681, 691 (6th Cir. 2005) (noting in response to judge's invocation of the millstone passage that "[i]f the Constitution sanctions such

On the other hand, we conclude that Lowe was not ineffective for failing to object to the prosecutor's comparison of the attitude toward crime in Galveston and the Rio Grande Valley to that in Williamson County.  Ward asserts that this argument was an improper appeal to the jury to sentence him based on community expectations, while the State contends that it was a proper plea for law enforcement.  Argument by counsel "constitutes a proper plea for law enforcement if it urges the jury to be the voice of the community, rather than asking the jury to lend its ear to the community."[53]  While the prosecutor's comments danced close, they did not constitute an impermissible invitation for the jury to sentence Ward based on community expectations.  The prosecutor did not state that the people of Williamson County were expecting or demanding a particular sentence;[54] rather, the prosecutor sought to goad the jury to return a lengthier sentence by parading before it the specter of living in a permissive and crime-infested locale.  As an objection to this likely would have been futile, we cannot

direct reliance on religious sources when imposing criminal sentences, then there is nothing to stop prosecutors and criminal defense lawyers from regularly citing religious sources like the Bible, the Talmud, or the Koran to justify their respective positions on punishment").

[53] *Harris v. State*, 122 S.W.3d 871, 888 (Tex. App.--Fort Worth 2003, pet. ref'd) (citing *Cortez v. State*, 683 S.W.2d 419, 421 (Tex. Crim. App. 1984)).

[54] *See, e.g.*, *Cortez*, 683 S.W.2d at 420; *Prado v. State*, 626 S.W.2d 775, (Tex. Crim. App. 1982); *Pennington v. State*, 345 S.W.2d 527, 528 (Tex. Crim. App. 1961); *Cox v. State*, 247 S.W.2d 262, 263 (Tex. Crim. App. 1961); *Porter v. State*, 226 S.W.2d 435, 436 (Tex. Crim. App. 1950); *Peyson v. State*, 124 S.W.2d 137, 138 (Tex. Crim. App. 1939); *Mata v. State*, 952 S.W.2d 30, 33 (Tex. App.--San Antonio 1997, no pet.).

say that Lowe was ineffective for failing to lodge one.

In sum, we conclude that Lowe was ineffective for failing to object to the prosecutor's quotation of the millstone passage during closing argument; but was not ineffective for failing to object to discussion of the varying attitudes toward crime in different Texas counties.

2

Having found that Lowe performed deficiently at the punishment phase of Ward's trial, we must now determine whether Ward suffered prejudice as a result. In order to prove prejudice, Ward must establish a reasonable probability that but-for his counsel's deficient performance, he would have received a "*significantly* less harsh" sentence.[55] We have observed that this standard reflects our concern of allowing review of sentences imposed by state courts possessing a "wide range of sentencing discretion" while avoiding an "automatic rule of reversal."[56] When applying this standard, we "must consider such factors as the defendant's actual sentence, the potential minimum and maximum sentences that could have been

---

[55] *Spriggs v. Collins*, 993 F.2d 85, 88 (5th Cir. 1993). Ward contends that *Spriggs* was overruled by the Supreme Court's decision in *Glover v. United States*, 531 U.S. 198, 203 (2001). We have adopted *Glover*'s "any amount of jail time" test for cases involving the federal sentencing guidelines, while holding that *Spriggs* still applies in cases involving state sentencing regimes. *United States v. Grammas*, 376 F.3d 433, 437-38, 438 n.4 (5th Cir. 2004). We may not overrule another panel of this Court absent an intervening decision by the United States Supreme Court overriding the earlier decision. *United States v. Pettigrew*, 77 F.3d 1500, 1511 n.1 (5th Cir. 1996). Thus, *Spriggs* applies here.

[56] *United States v. Reinhart*, 357 F.3d 521, 531 (5th Cir. 2004) (internal quotation marks and citation omitted); *see United States v. Phillips*, 210 F.3d 345, 351 (5th Cir. 2000).

received, the placement of the actual sentence within the range of potential sentences, and any relevant mitigating or aggravating circumstances."[57]

The State argues that Ward cannot establish a reasonable probability that his sentence would have been significantly less harsh but for Lowe's errors. The State observes that Ward's sixty-year sentence fell far short of the maximum of life, indicating that the jury afforded him some measure of clemency despite Lowe's ineffective assistance. Further, the State urges that the despicable nature of Ward's crimes coupled with the well-known abhorrence expressed by Williamson County juries towards sex offenders guaranteed a lengthy sentence regardless of whether Lowe performed deficiently. In short, the State argues that Ward must regard his sentence of sixty years as a "victory"; that no amount of improvement in Lowe's performance would have resulted in more lenient punishment.

On the other hand, Ward argues that the cumulative prejudicial effect of his counsel's errors gives rise to a reasonable probability that, but-for those errors, he would have received a significantly shorter sentence. This argument is not without merit. Timely objections likely would have resulted in the exclusion of the bestiality photographs and evidence of Ward's involvement with drugs, preventing the jury from considering this

---

[57] *United States v. Segler*, 37 F.3d 1131, 1136 (5th Cir. 1994) (citing *Spriggs*, 993 F.2d at 88).

34

highly prejudicial material when determining Ward's sentence. Further, a timely objection and request for a curative instruction in response to testimony regarding the lack of persons convicted of aggravated sexual assault given probation in Williamson County would have aided in mitigating any suggestion that Ward's sentence should mirror those assessed by other Williamson County juries.

In addition, a timely objection and request for a curative instruction would have mitigated the prejudice generated by the prosecutor's invocation of the millstone passage, a statement calculated to incite the jury to factor into its sentencing determination considerations of divine retribution. Finally, the failure to request a curative instruction in response to the prosecutor's suggestion that the jurors' names, addresses and telephone numbers could be placed on a sign in Ward's front yard if they had the temerity to grant probation was inexcusable. Any rational juror faced with such a prospect would be hesitant to consider a sentence of probation for fear of suffering ostracization within her community.

Considering this evidence in the first instance, we may be persuaded that but-for these errors, Ward would have received a significantly less harsh sentence. Our task under the AEDPA, however, is that of determining whether the state habeas court's application of the law to the facts was reasonable. Importantly, in order to grant habeas relief from a state conviction following rejection of the petitioner's state habeas application, we must

35

conclude that the state habeas court's application of federal law was not only incorrect, but "objectively unreasonable."[58]

With respect to prejudice, the state habeas court held that "given the severity and number of the offenses and the strength of the evidence [against Ward], there is no reasonable probability that the outcome would have been different."[59] While we may take issue with the *correctness* of this determination, we cannot say that it constitutes an objectively unreasonable application of federal law to the facts of this case. Insulated from all potentially inadmissible evidence and prejudicial statements, the jury would still have heard testimony that Ward took impressionable boys into his confidence--showering them with attention, gifts, and encouragement--only to commit inexcusable depredations, including sexual assault and aggravated sexual assault. Our society does not deal lightly with these sorts of sexual predators; nonetheless, the jury in this case sentenced Ward to 60 years when a sentence of 99 years or life was available.[60] Given the seriousness of the offenses to which Ward pleaded guilty, a reasonable possibility

---

[58] *See, e.g.*, *Garcia v. Dretke*, 388 F.3d 496, 500 (5th Cir. 2004); *Jones v. Dretke*, 375 F.3d 352, 354 (5th Cir. 2004); *Morrow v. Dretke*, 367 F.3d 309, 313 (5th Cir. 2004); *Riley v. Dretke*, 362 F.3d 302, 305 (5th Cir. 2004); *Schaetzle v. Cockrell*, 343 F.3d 440, 443 (5th Cir. 2003).

[59] *Ex parte Ward*, Nos. 96-624-K368A & 96-625-K368A, at 9.

[60] *See* TEX. PEN. CODE ANN. § 22.021(e) (Vernon 1994) (aggravated sexual assault described as a first degree felony); TEX. PEN. CODE ANN. § 12.32(a) (Vernon 1994) ("An individual adjudged guilty of a felony of the first degree shall be punished by imprisonment in the institutional division for life or for any term or not more than 99 years or less than 5 years.").

exists that he may receive a *more harsh* sentence if he were granted a new trial as to punishment.[61]    In short, looking as we must through the prism of AEDPA deference, we decline to disturb the state habeas court's determination that Ward was not prejudiced.

III

Because Ward failed to establish that his guilty plea was entered involuntarily, we find no error in the district court's rejection of his ineffective assistance claim with respect to his conviction.    This portion of the district court's judgment is AFFIRMED.    However, because we are persuaded that the state habeas court's determination that Ward suffered no prejudice as a result of his counsel's errors does not constitute an objectively unreasonable application of clearly established federal law to the facts of this case, we REVERSE the judgment of the district court granting Ward habeas relief as to his sentence, and RENDER judgment in favor of the state.

AFFIRMED in part, REVERSED in part, and judgment RENDERED for the state.

---

[61] The district court recognized this fact, warning Ward "with the old adage, 'be careful what you wish for--you might get it.'" *Ward v. Cockrell*, No. A-01-CA-354-SS, at 19 n.3.