ACCEPTED
13-15-00070-CR
THIRTEENTH COURT OF APPEALS
CORPUS CHRISTI, TEXAS
7/14/2015 1:23:44 PM
CECILE FOY GSANGER
CLERK

CASE NO. 13-15-00070-CR

IN THE COURT OF APPEALS

FILED IN
13th COURT OF APPEALS
CORPUS CHRISTI/EDINBURG, TEXAS
7/14/2015 1:23:44 PM
CECILE FOY GSANGER
Clerk

THIRTEENTH JUDICIAL DISTRICT

CORPUS CHRISTI, TEXAS

JOSE BARBONTIN SALAS
APPELLANT

VS.
THE STATE OF TEXAS,

APPELLEE

Cause No. 14-05-11,997

In the 24th Judicial District Court of
DeWitt County, Texas

# BRIEF FOR APPELLANT, JOSE BARBONTIN SALAS

David Alan Disher
Attorney for the Appellant,
SBC # 05895600
1167 FM 2144, Schulenburg, Texas 78956
Telephone Number: 979-263-5174
Fax Number: 979-263-5183

ORAL ARGUMENT REQUESTED

1

## IDENTITY OF PARTIES AND COUNSEL

Appellant hereby represents that the following listed persons have an interest in this case and the following parties' rights may be adversely affected by the outcome in the Court so that the Justices thereof may review the same to determine if recusal or disqualification is necessary and that proper notice be given of the judgment and all orders of the court of appeals:

1.  Mr. Jose Barbontin Salas, Appellant, who may be served with notice herein by delivering the same to his appellate counsel of record, Mr. David Alan Disher, at the address shown on the cover hereof;

2.  The State of Texas, Appellee, by and through her Counsel, Mr. Michael Sheppard, DeWitt County Criminal District Attorney, Office Of The DeWitt County Criminal District Attorney's Office, DeWitt County Courthouse, 307 N. Gonzales, 3rd Floor, Cuero, Texas  77954,

3. David Alan Disher, the Appellant's attorney on appeal, David Alan Disher, SBC # 05895600, 1167 FM 2144, Schulenburg, Texas 78956, and

4.  The Honorable Jack Marr, Victoria County Courthouse, 115 North Bridge St., Victoria, Texas  77901-6544.

/s/ *David Alan Disher*

_____
Respectfully submitted,
David Alan Disher, TBC# 05895600
Attorney for Appellant

2

# **TABLE OF CONTENTS**

Page

Identity of Parties and Counsel ............................................. 2

Table of Contents ................................................................. 3

Index of Authorities ............................................................. 5

Statement of the Case ........................................................... 10

Statement Regarding Oral Argument .................................... 11

**POINTS PRESENTED FOR REVIEW** ........................... 12

Statement of Facts ................................................................. 13

Summary of the Argument .................................................... 19

**POINT NUMBER ONE RESTATED**
DURING VOIR DIRE THE STATE
REPEATEDLY ASKED THE VENIREPERSONS
IF THEY COULD GIVE OR ASSESS A
LIFE SENTENCE
And Argument ....................................................................... 30

**POINT NUMBER TWO RESTATED**
THE STATE AT ITS FINAL ARGUMENT ON
GUILT/INNOCENCE URGED THE JURY TO BE
THE CONSCIENCE OF THE  COMMUNITY
And Argument ....................................................................... 70

**POINT NUMBER THREE RESTATED**
THE STATE'S WITNESS, CARL BOWEN, DURING THE
GUILT/INNOCENCE PHASE OF THE TRIAL, STATED
THAT APPELLANT WAS ON PAROLE
And Argument ....................................................................... 79

Certificate of Compliance ...................................................... 86

Certificate of Service .......................................................... 87

# INDEX OF AUTHORITIES

Page

## CASES

***Morgan v. Illinois***,
     *504 U.S. 719 (1992)*............................................... 20, 59, 62

***Wainwright v. Witt***,
     *469 U.S. 412 (1985)* ............................................... 20, 59, 62

***Allridge v. State***, *850 S.W.2d 471, 480*
     *(Tex.Crim.App.1991)*............................................. 58, 60

***Briddle v. State***, *742 S.W.2d 379, 384*
     *(Tex.Crim.App. 1987)* ............................................ 20, 58, 61

***Cortez v. State***, *683 S.W.2d 419, 420-421*
     *(Tex.Crim.App. 1984)* ............................................ 73

***Cox v. State***, *247 S.W.2d 262, 263*
     *(Tex.Crim.App. 1951)*............................................. 74, 75

***Crawford v. State***,
     15 Tex.App. 501 ...................................................... 77

***Edwards v. State***, 77 S.W.2d 241
     *(Tex.Crim.App. 1934)*............................................. 77

***Fearance v. State***, *771 S.W. 2d 486*
     *(Tex.Crim.App. 1988)*............................................. 59, 62

***Garcia v. State***, *919 S.W.2d 370, 389*
     *(Tex.Crim.App. 1994)* ............................................ 20, 59, 61

***Hazzard v. State***, 15 S.W.2d 638
     *(Tex.Crim.App. 1929)* ............................................ 75, 77

***Jones v. State***, 205 S.W.2d 590
     *(Tex.Crim.App. 1947)* ............................................ 75

***Jones v. State***,  220 S.W.2d 156
     *(Tex.Crim.App. 1949)* ............................................   75

***Johnson v. State***, *982 S.W.2d 403, 405*
     *(Tex.Crim.App. 1998)* ............................................   20, 58, 61

***Martinez v. State***, *588 S.W.2d 954, 955 n. 1*
     *(Tex.Crim.App. 1979)* ............................................   59, 62

***Peysen v. State***, *124 S.W.2d 137, 138-139*
     *( Tex.Crim.App. 1939)* ............................................   74, 77

***Porter v. State***, *226 S.W.2d 435, 436-437*
     *(Tex.Crim.App. 1950)*  ............................................   74

***Rodriguez v. State,*** 119 S.W.2d 1048
     *(Tex.Crim.App. 1938).*............................................   77

***Standefer v. State***, *59 S.W.3d 177*
      *(Tex.Crim.App. 2001)* ............................................   19, 20, 57, 58,
     59, 60, 61

***Stine v. State***, *300 S.W.3d 52, 59*
     *(Tex.App.—Texarkana 2009, **pet. dism'd***) ..............   28, 29, 82,
     83, 84

***White v. State***, 117 S.W.2d 450
     *(Tex.Crim.App. 1938)* ............................................   77

***Woolly v. State,*** *247 S.W. 865, 93*
     *(Tex.Crim.App. 1923 )* ............................................   77

***Wyle v. State***, *777 S.W.2d 709, 716-717*
     *(Tex.Crim.App.1989)*............................................   20, 58,  61

6

**RULES**

TEX. R. APP. P. 9.4i (2) (B) ................................................... 86

TEX. R. APP. P. 9.4i (3) ...................................................... 86

TEX. R. APP. P. 9.4i (1)....................................................... 86

TEX. R. APP. P. 38.1........................................................... 9

TEX.R.EVID 403 ............................................................... 79

TEX.R.EVID 404(b)............................................................. 79, 82

**MISCELLANEOUS**

Black's Law Dictionary, Fifth Edition .................................... 20, 59, 62

* Citations to the Clerk's Record are indicated by "C.R.", followed

by the volume and page number(s).

* Citations to the Statement of Facts or Reporter's Record are indicated

"R.R.", followed by the volume and page number(s).

CASE NO. 13-15-00070-CR

IN THE COURT OF APPEALS

THIRTEENTH JUDICIAL DISTRICT

CORPUS CHRISTI, TEXAS

JOSE BARBONTIN SALAS

APPELLANT

VS.
THE STATE OF TEXAS,

APPELLEE

Cause No. 14-05-11,997

In the 24th Judicial District Court of
DeWitt County, Texas

# BRIEF FOR APPELLANT, JOSE BARBONTIN SALAS

David Alan Disher
Attorney for the Appellant,
SBC # 05895600
1167 FM 2144, Schulenburg, Texas 78956
Telephone Number: 979-263-5174
Fax Number: 979-263-5183

**TO THE HONORABLE JUSTICES OF THE COURT OF APPEALS:**

Comes now, Jose Barbontin Salas, herein referred to as Appellant, and submits this brief for the Appellant pursuant to the provisions of the TEX. R. APP. P. 38.1.

## STATEMENT OF THE CASE

On or about the 21st day of January, 2015, a Jury found Jose Barbontin Salas, Appellant, guilty of the felony offense of Evading Arrest Or Detention With A Vehicle, as alleged in the Indictment. (C.R. Volume 1, pg. 90).

On or about the 21st day of January, 2015, the Jury assessed punishment for Jose Barbontin Salas, Appellant, of Life in the Institutional Division Of The Texas Department Of Criminal Justice with no fine. (C.R. Volume 1, pg. 96).

On or about the 21st day of January 2015, the Court signed the Judgment of Conviction in Cause Number 14-05-11,997 in the 24th Judicial District Court, DeWitt County, Texas convicting Jose Barbontin Salas, Appellant, with the felony offense of Evading Arrest With A Vehicle And Habitual Felony Offender and with a sentence of Life in the Institutional Division Of The Texas Department Of Criminal Justice with no fine. (C.R. Volume 1, pgs. 100 through 103).

January 21, 2015 Jose Barbontin Salas, Appellant, filed the Notice of Appeal with the Court. (C.R. Volume 1, pg. 98).

## STATEMENT REGARDING ORAL ARGUMENT

The Appellant, Jose Barbontin Salas, requests oral argument.

# POINTS PRESENTED FOR REVIEW

## POINT NUMBER ONE

DURING VOIR DIRE THE STATE

REPEATEDLY ASKED THE VENIREPERSONS

IF THEY COULD GIVE OR ASSESS A LIFE SENTENCE

(R.R. 2, pgs. 155-159)

## POINT NUMBER TWO

THE STATE AT ITS FINAL ARGUMENT ON GUILT/INNOCENCE

URGED THE JURY TO BE THE CONSCIENCE OF THE  COMMUNITY

(R.R. 3, pg. 122)

## POINT NUMBER THREE

THE STATE'S WITNESS, CARL BOWEN, DURING THE

GUILT/INNOCENCE PHASE OF THE TRIAL, STATED THAT

APPELLANT WAS ON PAROLE (R.R. 3, pg. 88)

## STATEMENT OF FACTS

### Improper commitment questions

Mr. Sheppard announced to the jury he had about a half hour to talk about punishment.   (R.R.2, pg. 124).  From then until R.R.2, pg. 159 Mr. Sheppard unleashed a barrage of illegal commitment questions too numerous to count with a withering set of objections most of which were overruled. However a running objection was sustained.  (R.R. 2, pg. 155).  Mr. Sheppard lowered the burden of proof by repeatedly inquiring of the venire if they could assess the maximum punishment, if they could consider or assess the maximum punishment, and if they could give it.

MR. SHEPPARD: Anybody else? Okay. Mr. Mata and Mrs. Howard's row is where we are now.  (R.R. 2, pg. 158).  And that's got Mr. Mata, Mrs. Jendrzey, Mr. Williams, Mrs. Doerhman and so forth. Anybody on that row who could not consider or assess the high end of the range of punishment if it's proven in the trial of a hypothetical case a person is a habitual felon under the laws of Texas? Anybody? Mr. Mata, how do you feel about the habitual?

VENIRE: I'm good.

MR. SHEPPARD: Okay. Mrs. Jendrzey, what do you think?

VENIRE: Yes.

MR. SHEPPARD: Mr. Williams, how are you feeling about it?

VENIRE: I mean, that's a bitch. That's a bitch right there.

MR. SHEPPARD: Okay. And I appreciate the honest responses. Anybody else on that row have different feeling? I'm going to go back to speed up and go just to the rest of the panel as a whole. Back all the way to Mr. Moore's row ending with Christopher Saunders and Sarah Nunez's row ending with Kenneth (R.R. 2, pg. 158) Diebel. Anybody who could not consider and in an appropriate case assess the high end of the range of punishment if it's proven in the trial of a hypothetical case that a person fleeing from the officer was also a habitual felon in the state laws of Texas? Anybody who feels they could not do that? In principle? Okay. Take it from the silence of the rest of the panel then that you can except for those of you who have raised your hands and talked to me about it earlier and I appreciate that very much that if you haven't raised your hands and discussed it with me that you can follow the law as I described it for you and I appreciate your willingness to do so."

**Conscience of our Community Argument During Guilt/Innocence Final Argument**

So we ask that as a conscience of our community that you take this duty very --

MR. DISHER: Objection, Your Honor.

THE COURT: Nature of your objection, Mr. Disher?

MR. DISHER: A case from the Court of Criminal Appeals. I highlighted it for you. There is an objection to using community as an improper argument. What the community desires. What the community desires.

MR. SHEPPARD: That's not the same thing. May I approach, Your Honor?

THE COURT: You may.

(Bench conference on the record.)

THE COURT: Mr. Sheppard?

MR. SHEPPARD: Your Honor, that's not what this case says. What this case says is that you can't say the people in this county expect you to convict this guy because he's a well known criminal and everybody knows about this case. Juries have always been referred to as the conscience of their community. I refer to them as the conscience of the community every trial I have tried and so does Bobby Bell and so does every other prosecutor in the district. They are the conscience of the community. It's not the same thing and it's an inapt --

MR. DISHER: Here it is right here. There's three cases on that. One is the Cox case, the 247.

MR. SHEPPARD: But what do they stand for?

15

MR. DISHER: The community is asking the jury to convict the Defendant.

MR. SHEPPARD: That's not the same thing.

MR. DISHER: The community would want the Defendant sent to prison if people knew what he had done.

MR. SHEPPARD: That's not the same thing.

MR. DISHER: Argument designed to induce conviction or a particular punishment to satisfy the community's desires. All these things objectionable and that last one is Cortez which I have handed the court and the Prosecution.

THE COURT: Well, Mr. Disher, what I understand -- I understand these cases that you have cited, but all that Counsel has said so far is as the conscience of the community, you. He has not said your community wants you to do anything.

MR. DISHER: Well, they -- looks like they're --

THE COURT: He has simply acknowledged that he is arguing to them that they represent the community. That's not improper. So I'm noting your objection but I'm overruling your objection. Now if his argument gets into the proscribed areas then I'll entertain a subsequent objection.

MR. SHEPPARD: Thank you, Your Honor.

16

MR. DISHER: Can I make one further, Your Honor, objection?

THE COURT: Yes.

MR. DISHER: Says whenever prosecuting attorney tells the jury that the people of the community when a crime was committed and wants the accused person convicted or assessed a particular punishment, he's not only injecting a new and harmful fact of evidence which had no place in the original was conducting his case along lines never contemplated by the framers of our Constitution.

THE COURT: I agree with that, and if he says something like that that will be subject to objection.

MR. DISHER: Thank you.

THE COURT: Mr. Manning, you may continue.

(End bench conference.)

MR. MANNING: Thank you for your patience. As members of the community we ask that you just pursue your civic duty here today and we request that the jury return a verdict form of number one. Thank you for your time, and we really appreciate your civic duty. Thank you.

(R.R. 3, pgs. 123-126).

## Police Officer Tells Jury Appellant is on Parole

Q. Well, if I can just interrupt you a little bit, Sergeant. What was the Defendant running from?

A. The Defendant was running from a Yoakum police officer.

Q. And did he tell you that he saw cops chasing him?

A. Yes. He did. He said, man, I saw him behind me

and I didn't want to stop. I'm on parole and I didn't want to go back to jail.

MR. DISHER: Objection.

## SUMMARY OF THE ARGUMENT

### Improper Commitment Questions

By repeatedly asking improper commitment questions of giving or assessing a life sentence regarding the punishment range issue rather than considering the full punishment range, the State certainly tainted and prejudiced the venire against Appellant and contributed to the award of a life sentence against the Appellant. The State ignored prevailing case law as outlined in ***Standefer v. State***, *59 S.W.3d 177 (Tex.Crim.App. 2001).* ***Standefer*** *at 179* states, "An attorney cannot attempt to bind or commit a prospective juror to a verdict based on a hypothetical set of facts." ***Standefer*** *at 179* goes on to explain, "Commitment questions are those that commit a prospective juror to resolve, or to refrain from resolving, an issue a certain way after learning a particular fact." Standefer at 179-180 further illustrates, "Can you assure us that the knowledge of those facts would not prevent you or substantially impair you in considering a life sentence in such a case?" "This is not a proper question." ***Standefer*** *at 180.*

Not all commitment questions are improper. ***Standefer*** *at 181.* For example, questions concerning a juror's ability to consider the full range of punishment for a particular offense meet the above definition of commitment questions but are nevertheless proper. ***Standefer*** *at 181* and

***Briddle v. State***, *742 S.W.2d 379, 384 (Tex.Crim.App. 1987);* ***Wyle v. State***, *777 S.W.2d 709, 716-717 (Tex.Crim.App.1989).* …jurors are required to follow the law enacted by the Legislature. So a prospective juror must be able to consider the full range of punishment provided for an offense or be challengeable for cause. ***Standefer*** *at 181* and ***Johnson v. State***, *982 S.W.2d 403, 405 (Tex.Crim.App. 1998).*

The distinguishing factor is that the law requires jurors to make certain types of commitments. When the law requires a certain type of commitment from jurors, the attorneys may ask the prospective jurors whether they can follow the law in that regard. ***Standefer*** *at 181.*

However, where the law does not require the commitment, a commitment question is invariably improper. ***Standefer*** *at 181.*

The proper commitment question regarding punishment may be found at ***Garcia v. State***, *919 S.W.2d 370, 389 (Tex.Crim.App. 1994)* wherein it states, "A prospective juror who is unable to consider the full range of punishment may be challenged for cause under the standards established in ***Wainwright v. Witt***, *469 U.S. 412 (1985)* and ***Morgan v. Illinois***, *504 U.S. 719 (1992)* Examining the words consider, assess, and give and distinguishing one from the other, reference is made to Black's Law Dictionary, Fifth Edition.

Consider is defined therein as, "To fix the mind on, with a view to careful examination; to examine, to inspect. To deliberate about and ponder over. To entertain or give heed to."

Assess is defined therein in relevant part as, "To ascertain; fix the value of. To fix the amount of damages or the value of the thing to be ascertained."

Give judgment is defined therein as, "To render, pronounce, or declare the judgment of the court in an action at law."

The State tainted the entire venire but a small doubt to the taint still existed with respect to a few venirepersons after voir dire. To be certain the taint was complete, the State was able to exclude 'for cause' the following venirepersons who would consider the full punishment range but not agree to assess or give a life sentence.

Although Venire No. 11 could consider the full punishment range he was stricken by State's motion over Appellant's objection.

"MR. SHEPPARD: Oh, okay. And as far as the habitual felon range, you know, for fleeing in a vehicle, if you have two prior felonies you could go for life or 99 even though what you are charged with is fleeing in a vehicle. Could you ever consider or assess the maximum range of 99 years?

21

VENIRE NO. 11: I don't know. That's throwing away somebody else's life right there.

MR. DISHER: And I'm not asking you to do it in this case but I'm saying could you in an appropriate case do that or do you think you could never do that?

VENIRE NO. 11: I don't think I could do that.

MR. SHEPPARD: Okay. All right, sir.

THE COURT: Very well. Thank you. I'm sorry. Did you have another question? Go ahead.

MR. DISHER: Yes. Forgetting the word assess for a minute, you know the difference between assess and consider?

VENIRE NO. 11: I'm going to figure it out today.

MR. DISHER: Considering is what you think about and assess actually means do, commit to do. Just in your mind could you at least give some serious thought to the full punishment range, two priors, could be serious, could not be so serious. Anywhere from 25 to 99 or life. Could you not consider the entire punishment range?

VENIRE NO. 11: I could consider the whole range but I wouldn't -- I'm not real on that -- on the life side, you know what I'm saying.

MR. DISHER: But you could -- you can consider it since it is the law as the judge will instruct you?

VENIRE NO. 11: Yes.

MR. DISHER: Okay. I don't have any further questions.

THE COURT: Okay. Thank you, sir. If you wish to take a break you may do so.

MR. SHEPPARD: I move to strike, Your Honor.

MR. DISHER: Object.

THE COURT: Granted."

(R.R. 2, pgs. 204-205)

Although Venire No. 33 could consider the full punishment range he was stricken by State's motion over Appellant's objection.

MR. SHEPPARD: "Yes, sir. I'll be brief.

Mr. Williams, we're just trying to recall what you told us about punishment. My recollection is that when I asked the question you said if a person flees from an officer and if it's proven in trial that they have a prior felony conviction, they have been to the pen before, that you still think twenty years as a maximum is too -- it's too much?

VENIRE NO. 33: Yes, sir.

MR. SHEPPARD: And you could not consider or assess twenty years?

VENIRE NO. 33: No, sir.

MR. SHEPPARD: In that scenario; is that fair?

VENIRE NO. 33: Yes, sir.

MR. SHEPPARD: Okay. And I appreciate the honest response, and Mr. Disher may have some questions.

THE COURT: Mr. Disher?

MR. DISHER: Considering a little bit different language do you know what consider means?

VENIRE NO. 33: Yes, sir.

THE COURT: What does it mean?

VENIRE NO. 33: Consider?

MR. DISHER: Yeah.

VENIRE NO. 33: Well, like something like think about it or.

MR. DISHER: To think about it?

VENIRE NO. 33: Yeah.

MR. DISHER: Do you know what the word assess means?

VENIRE NO. 33: Assess.

MR. DISHER: Assess. Like to give. Does that make sense, to give?

VENIRE NO. 33: Yeah.

MR. DISHER: If we -- when I ask -- I'm not asking you to make a definite commitment here. I'm asking you to can you have an open mind and wait until the State puts on its evidence. They might have a --they might have a multiple murderer and then gets this other and, you know, he may have several murder convictions and then this adds on.

Could you consider a life sentence or if they just had one murder case and gets convicted for this evading, would you consider twenty years? I'm not saying that is the case but --

VENIRE NO. 33: Yeah. I understand what you are saying. Yeah. I mean, I -- if he's had priors and, you know, yeah.

MR. DISHER: So until you have heard the entire case the evidence all we're asking you do is to be able to keep your mind open and consider the full range of punishment.

VENIRE NO. 33: Yes, sir.

THE COURT: You could do that?

VENIRE NO. 33: Yes, sir.

MR. DISHER: Thank you.

MR. SHEPPARD: I have no further questions.

THE COURT: Thank you. Thank you, Mr. Williams. If you want to take a break right now you can.

VENIRE NO. 33: Thank you.

THE COURT: Yes, sir.

MR. SHEPPARD: Your Honor, the State would move on Mr. Williams.

MR. DISHER: Objection. I believe he's following the law.

MR. SHEPPARD: Your Honor, he's told me two different times that he cannot consider and in an appropriate case assess twenty years in that scenario. Just asking him can you keep an open mind and consider everything doesn't get you where you need to be. I mean, I'm entitled to a juror who can consider it and in an appropriate case assess it. That's the language.

THE COURT: Mr. Disher, your objection?

MR. DISHER: I learned that about ten years ago at trial in Harris County that do not ask about giving, assessing. Because I tried it. I got stomped on and they had the case. You have to ask consider and that's it.

THE COURT: Yeah.

MR. DISHER: I mean, that's it. He's gone beyond that.

THE COURT: Okay. Well, he said he couldn't consider it and he said he could consider it. I'm going to grant the motion to strike. No. 33 is stricken."

(R.R. 2, pgs. 218-221).

Never did the State ask the consider question but asked consider and/or assess questions when questioning Venire person No. 33. The State kept asking compound consider/assess questions regarding punishment and never asked a simple consider question. (R.R. 2, pgs. 218-221).

"MR. DISHER: No, Your Honor. I think we got – We had two strikes that we didn't like and - -

THE COURT: I'm sorry. You had what?

MR. DISHER: We had two strikes that we didn't like.

THE COURT: Two challenges that you disagreed that and you feel that I have committed error?

MR. DISHER: Right." (R.R. 2, pg. 225).

**Argument to the Jury Concerning the Jury's Duty as Members of the Community to Return a Verdict of Guilty**

The State was adamant on convincing the jury during argument on guilt/innocence it was their duty as members of the community to just pursue their civic duty and return a verdict of guilty. Nowhere was evidence produced to show that such was their duty. The attorney for the State made an assertion of fact which is calculated and probably did have a damaging

influence before the jury.  This was clearly prejudicial and demands a reversal.

**State Inserted Fact of Appellant being on Parole to the Jury**

In *Stine v. State*, 300 S.W.3d 52, 59 (Tex.App.—Texarkana 2009, *pet. dism'd*) factor (1), the weight of other evidence supporting the decision, Appellant according to the State, made a voluntary custodial statement admitting to the elements of the indictment but the State through its police officer witness interjected the parole issue to the jury.   (R.R. 3, pg. 88).

In *Stine* factor (2), the nature and form of the question is "Q. And did he tell you that he saw cops chasing him?
A. Yes. He did. He said, man, I saw him behind me
and I didn't want to stop. I'm on parole and I didn't want to go back to jail."
(R.R. 3, pg. 88).  The State by an experienced witness, a police officer, managed to give an expansive answer to violate the right of Appellant to be tried on the merits of the instant case and not extraneous ones.

In *Stine* factor (3), whether other evidence concerning the same question has been admitted,  the State was trying to ascertain why Appellant ran  (R.R. 3, pg. 89)  although the reason does not appear to be an element of the indictment.  (C.R. Volume 1, pgs. 7-8).  The State asked its question

which was answered but the jury was admonished to ignore the parole part of the answer.  (R.R. 3, pg. 91).

In *Stine* factor (4),  the particular instruction given,  THE COURT: told the jury, "All right. Ladies and Gentlemen, I'm going to sustain Mr. Disher's objection with respect to the witness' statement about being on parole. You are to disregard the witness' comment about the Defendant's statement about being on parole. That is not to be considered by you for any purpose in your deliberations and it is not to be considered as evidence of any fact. It's not to be considered for any purpose." Appellant believes the Court did a good job trying to cure the objectionable remark by the State's police officer concerning Appellant's parole status.  But once in the jurors' mind, how do you erase it?  The proverbial cat's out of the bag.

In *Stine* factor (5), the harm to the accused as measured by the severity of the sentence; the sentence was the maximum possible set at imprisonment for life.  (C.R. Volume 1, pg. 100).

## POINT NUMBER ONE RESTATED

DURING VOIR DIRE THE STATE

REPEATEDLY ASKED THE VENIREPERSONS IF THEY COULD

GIVE OR ASSESS A LIFE SENTENCE  (R.R. 2, pgs. 155-159)

## ARGUMENT

*Relevant Facts*:

Mr. Sheppard, for the State, "Now I'm going to talk to you about the range of punishments available and whether in a reasonable case you can consider or assess the punishment. I try to be fair with this question because it sounds like I'm asking you what are you going to do to Mr. Salas if you convict him, and I'm not asking you that. It's inappropriate for me to ask you that because you don't know anything about the case and you don't know anything about the punishment. So you have no idea as a practical matter what you need to do until you hear those things. I'm asking you, you know, a philosophical question about the law".  (R.R. 2, pg. 127).

In an appropriate case can you consider and assess the high end or is it your belief that it doesn't matter what the facts are, there is no case of fleeing

from an officer in a vehicle in which I would assess ten years in the pen. (R.R. 2, pg. 128).

MR. DISHER: I'm not telling you to ask about a fine. All I'm doing is ask them if they can consider this range of punishment.

THE COURT: Your objection is sustained on the record. (R.R. 2, pg. 132).

MR. SHEPPARD: Okay. Mrs. Mutchler, could you consider and assess the full range of punishment including ten years if in an appropriate case if the case was appropriate?

VENIRE: Yes.

MR. SHEPPARD: Mr. Fellers, how about you?

VENIRE: Yes.

MR. SHEPPARD: Think so?

VENIRE: Uh-huh.

MR. SHEPPARD: Okay. Mrs. Wood?

VENIRE: (Witness nods head.)

MR. SHEPPARD: You all right with that?

VENIRE: (Witness nods head.)

MR. SHEPPARD: I am going to make a note that you are nodding.

VENIRE: Yes. Sorry.

MR. SHEPPARD: That's okay. She's just got to write it all down. Josephine Cardenas, you are okay or what do you think?

VENIRE: If I feel that it's been proven, yeah, I can.

MR. SHEPPARD: Mrs. Vacek?

VENIRE: Yes.

MR. SHEPPARD: Mrs. Victor?

VENIRE: Yes.

MR. SHEPPARD: Mrs. Krueger?

VENIRE: Yes.

MR. SHEPPARD: Mrs. Golibart?

VENIRE: Yes.

MR. SHEPPARD: Mrs. Metting?

VENIRE: Yes.

MR. SHEPPARD: You look a little quizzical?

VENIRE: I am.

MR. SHEPPARD: Are you getting queasy again?

VENIRE: No. Oh, yes. If you can prove it I'd be okay with it.

MR. SHEPPARD: No, I'm teasing you but I appreciate it. I really do. And I'm teasing you because you were honest with me and I don't want to

punish you for that because I appreciate your telling me how you feel about it because I need to know. Mr. Franke, in an appropriate case or do you think it's inappropriate no matter what ten years?

VENIRE: No. I don't think it's appropriate.

MR. SHEPPARD: Say that again?

VENIRE: I don't think it's appropriate.

MR. SHEPPARD: You think it's too much?

VENIRE: Yeah.

MR. SHEPPARD: Okay. So you in your mind you don't think it would ever be appropriate to assess ten years in the pen for fleeing from a peace officer?

VENIRE: No.

MR. SHEPPARD: Okay. And I appreciate that. I -- that's -- I'm not trying to talk you out of it. I just want to make sure I understand your position. And we'll probably talk to you a little bit more about that later but -- and that's No. 11, Mr. Patrick Franke. Does not think the high end of the punishment is appropriate to assess. And, No. 12 is Mrs. Baxter?

VENIRE: Yes, sir. I could imagine a scenario where I could do that. Yes.

MR. SHEPPARD: Mr. Lopez, how do you feel?

VENIRE: Yes, sir.

MR. SHEPPARD: Okay. Mrs. Reitz?

33

VENIRE: Yes, sir.

MR. SHEPPARD: Mr. Crisp, what do you think?

VENIRE: Could.

MR. SHEPPARD: Okay. Mrs. Garoni?

VENIRE: Yes, sir.

MR. SHEPPARD: Mr. Shoemacher?

VENIRE: Yes, sir.

MR. SHEPPARD: Mrs. Lauer?

VENIRE: Yes, sir.

MR. SHEPPARD: No. 18. No. 19, Mrs. Metting?

VENIRE: Yes, sir. In an appropriate case.

MR. SHEPPARD: Okay. Number 20, Mr. Burns?

VENIRE: Yes, sir.

MR. SHEPPARD: I am going to go back to Mrs.

Chaloupka, No. 21?

VENIRE: Yes.

MR. SHEPPARD: Mrs. Lathrop?

VENIRE: Yes.

MR. SHEPPARD: No. 22. She said -- you said yes you could?

VENIRE: Yes.

MR. SHEPPARD: In an appropriate case?

VENIRE: Yes, sir.

MR. SHEPPARD: Mr. Friedel, No. 23, could you do it in an appropriate case?

VENIRE: Yes, sir.

MR. SHEPPARD: Okay. Mr. Dismuke?

VENIRE: Yes, sir.

MR. SHEPPARD: No. 24. Am I pronouncing your name right? Dismuke?

VENIRE: Yes.

MR. SHEPPARD: Mr. Prasek?

VENIRE: Yes, sir.

MR. SHEPPARD: 25. Did I get your name right?

VENIRE: Uh-huh.

MR. SHEPPARD: Mrs. Caballero, what do you think?

VENIRE: Yeah.

MR. SHEPPARD: I'm sorry?

VENIRE: Yeah.

MR. SHEPPARD: Okay. You think you could consider the high end of the range of punishment or --

VENIRE: Ten years you are talking about?

MR. SHEPPARD: Uh-huh.

VENIRE: For?

MR. SHEPPARD: For the crime of fleeing from a police officer. In an appropriate case or do you think that's always too much?

VENIRE: Yeah. Just go on.

MR. SHEPPARD: You're not giving me a lot of confidence in you. You're kind of on the fence about it?

VENIRE: Well, did he kill anybody?

MR. SHEPPARD: I'm sorry?

VENIRE: Did he kill anybody?

MR. SHEPPARD: He didn't kill anybody. Just for --

MR. SHEPPARD: Now I'm not asking what you are going to do in this case. I'm asking in an appropriate case can you imagine the scenario where you could give ten years or if you think you just couldn't do it just no matter what?

MR. DISHER: I object to the word give. Should she consider.

VENIRE: Ten years or something like that but (inaudible).

MR. SHEPPARD: Say that again.

VENIRE: I said that's a little too much for, you know --

MR. SHEPPARD: I understand, and that's okay.

VENIRE: But --

MR. SHEPPARD: I'm not trying to trick you. I got the sense from the way you were looking at me that that's the way you felt and I just need you to say that if that's the way you feel and --

VENIRE: Because, I mean, if you kill somebody or something, that's something different but you know what I mean.

MR. SHEPPARD: I do know what you mean. So --

VENIRE: Five years is --

MR. SHEPPARD: Okay. So you think ten years is too much for the crime of fleeing from a peace officer and you could not consider it or assess it in any case; is that fair?

VENIRE: He didn't kill the officer, did he?

MR. SHEPPARD: No. That would be capital murder.

VENIRE: Okay. Five years.

MR. SHEPPARD: I'm not asking you what you are going to do. Okay. Well, we'll talk about it. I -- thank you though.

VENIRE: You're welcome.

MR. SHEPPARD: Okay. Mrs. Dueser, in an appropriate case could you consider or assess ten years for that crime?

VENIRE: Yes, I could.

MR. SHEPPARD: And I'll move on to Mrs. Villarreal?

VENIRE: Yes.

MR. SHEPPARD: Mrs. Jendrzey?

VENIRE: Yes.

MR. SHEPPARD: And No. 30, Mrs. Pedraza?

VENIRE: Yes.

MR. SHEPPARD: Going back to 31, Mr. Mata?

VENIRE: No.

MR. SHEPPARD: Could not?

VENIRE: No, sir.

MR. SHEPPARD: Just too much?

VENIRE: Too many years, yeah.

MR. SHEPPARD: Okay. I understand, and I appreciate it. Mr. Mata, I'm going to put you down as saying that you just couldn't consider or assess ten years in the pen for the crime of fleeing from a peace officer in a vehicle?

VENIRE: Yes, sir.

MR. SHEPPARD: No matter what. Is that fair?

VENIRE: Yes, sir.

MR. SHEPPARD: Okay. And that's No. 31.

VENIRE: 31.

MR. SHEPPARD: I appreciate the honest answer. Thank you. Mrs. Jendrzey.

VENIRE: I'm not sure.

MR. SHEPPARD: 32, you could if it was appropriate?

VENIRE: I --

MR. SHEPPARD: Oh, you said I'm not sure?

VENIRE: I'm not sure.

MR. SHEPPARD: Okay. And I know for a fact that you are not sure what you would do in this case and then know that's true of everybody else as well. But my question is can you conceive of a scenario where fleeing from a peace officer without it involving -- without it involving another felony fleeing from a peace officer would justify assessing ten years or can you not – do you think that would always be inappropriate?

MR. DISHER: Objection as to use of the word assess. Should be considered. (R.R. 2, pg. 141).

MR. SHEPPARD: Well, it's consider and assess. It's both.

MR. DISHER: Consider or.

MR. SHEPPARD: Could you consider and in an appropriate case assess.

THE COURT: Overruled.

MR. DISHER: Could I have a running objection to --

THE COURT: You can.

THE REPORTER: To what?

MR. SHEPPARD: I can't remember that thought. So what do you think?

VENIRE: I think I could.

MR. SHEPPARD: Okay. And if you change your mind, just raise your hand.

Mr. Williams, how about you, No. 33?

THE COURT: Excuse me, Mr. Sheppard.

MR. DISHER: I asked for a running objection and the court said yes. .

(R.R. 2, pg. 142).

THE REPORTER: Okay. Thank you.

MR. SHEPPARD: Mrs. Doerhman, in an appropriate case can you consider and assess the high end of the range of punishment or would it never be appropriate in your opinion no matter what?

VENIRE: I could.

MR. SHEPPARD: You could?

VENIRE: Uh-huh.

MR. SHEPPARD: Okay. Mrs. Garcia?

VENIRE: Yes, sir. I could.

MR. SHEPPARD: Mrs. Harwell?

VENIRE: Yes, sir. I could. 36.

MR. SHEPPARD: Mr. Bell, No. 37?

VENIRE: Yes, I could.

MR. SHEPPARD: Mrs. Sager?

VENIRE: Yes.

MR. SHEPPARD: No. 38. Mr. Gibson?

VENIRE: Yes.

MR. SHEPPARD: No. 39. Sharon Howard, No. 40?

VENIRE: Yes.

MR. SHEPPARD: Okay. Going back to Mrs. Nunez's row I'll start with No. 41, Mrs. Nunez?

VENIRE: Yes.

MR. SHEPPARD: Okay. 42, Dana Linn?

VENIRE: Yes.

MR. SHEPPARD: 43, Cody Geffert?

VENIRE: Yes.

MR. SHEPPARD: 44, Susan Plummer?

VENIRE: I could.

MR. SHEPPARD: 45, William Stehling?

VENIRE: Yes, sir.

MR. SHEPPARD: Okay. 46, Connie Presley?

VENIRE: Yes.

MR. SHEPPARD: 47, Claudie Dismuke?

VENIRE: Yes.

(R.R. 2, pg. 143).

MR. SHEPPARD: Mrs. Dismuke, would it put a burden on your family for both you and your husband to be on this jury?

VENIRE: Yes.

MR. SHEPPARD: So who should we let go?

VENIRE: Let him go. He makes a lot more.

MR. SHEPPARD: Oh, just bottom line pocketbook. We'll remember that when we're doing our strikes. Thank you. Mr. Villarreal.

VENIRE: No.

MR. SHEPPARD: No. Could not. And I appreciate it, and you told me earlier too that you had the issue with knowing a little bit about this case.

THE COURT: What is Mr. Villarreal's number?

MR. SHEPPARD: Thank you, Your Honor. It's 48. And Mrs. Nagel?

VENIRE: Yes.

MR. SHEPPARD: 49, you can. Mr. Diebel, No. 50. Looked like two holding it up upside down. Can you consider and assess that punishment if it's in an appropriate case or do you think it's always too much?

VENIRE: Yes, sir.

MR. SHEPPARD: Think you could?

VENIRE: Yes.

MR. SHEPPARD: Okay. I'm going to go back one more row and that's it row by row. Mr. Moore, how do you feel? Could you do it?

VENIRE: I think it's excessive.

MR. SHEPPARD: Okay. 51. And I guess the question is you could conceive of a scenario?

VENIRE: If that's all it is it was just evading then ten years is a long time.

MR. SHEPPARD: Yeah. So do you feel like you -- there's no instance in which you could assess?

VENIRE: Yes. There is an instance in which I could.

MR. SHEPPARD: I'm sorry?

VENIRE: Yes. There is an instance in which I could.

MR. SHEPPARD: Okay. Sorry. I was having a hard time hearing you. You are under that overhang and --

VENIRE: Right. Can't hear you either.

MR. SHEPPARD: You can or you cannot?

VENIRE: I can.

MR. SHEPPARD: Mr. Tesch?

VENIRE: Yes.

MR. SHEPPARD: Okay. Mr. Kerlick?

VENIRE: Yes.

MR. SHEPPARD: Mr. Kulik?

VENIRE: Yes.

MR. SHEPPARD: Mrs. Alex?

VENIRE: Yes, sir.

MR. SHEPPARD: Mr. Brandt?

VENIRE: Yes.

MR. SHEPPARD: Mr. Snow?

VENIRE: Yes, 57.

MR. SHEPPARD: No. 57. I'm on 58. Mrs. Deleon?

VENIRE: No.

MR. SHEPPARD: No, could not.

VENIRE: No.

MR. SHEPPARD: Okay. Thank you. That's No. 58. That's Patricia Deleon.

Mrs. Anderson, No. 59?

VENIRE: No. Couldn't.

MR. SHEPPARD: You could not?

VENIRE: Right.

MR. SHEPPARD: And Mr. Saunders?

VENIRE: Yes.

MR. SHEPPARD: You could in an appropriate case. Okay. Okay. Now I'm not going to go to the back rows. I apologize. I know y'all are disappointed but I don't think we're going to get there. Is there anybody on the back row who -- well, I'm not going to ask y'all to raise your hands right now because I think we're safe with the numbers that we have. Now, hate to beat a dead horse. I still have a few minutes. I'm still talking about punishment. If it is proven on the trial of the case hypothetically that a person accused of a crime has previously been convicted of a felony and been to the penitentiary and it's a hypothetical scenario but if that is proven the range of punishment increases.

And it doesn't matter what the underlying offense is, if it is a third degree felony or higher it now bumps up a notch. Okay? Meaning if you have been to the penitentiary previously and you are convicted of third degree felony fleeing from a peace officer, the punishment range is now two to twenty with a $10,000 fine. Now we're talking about twenty years in the pen. But it's incumbent upon the State to prove that a person in that scenario hypothetically that a person, you know, if the State is successful in proving that then the range of punishment goes up. And is that a problem for

45

you, Mrs. James?

VENIRE: No.

MR. SHEPPARD: Okay. And I'm not going to go person by person anymore because I know that took a while and I got to see everybody's answers and I appreciate it. I'm going to go row by row. Anybody on the first row who could not consider in an appropriate case assess twenty years in the pen if it is proven on the trial of the case a person has been to the penitentiary one time previously? Anybody who could not do it?

VENIRE: I don't think I could. Four.

MR. SHEPPARD: Mrs. Wood?

VENIRE: Yes.

THE COURT: What is that number?

MR. SHEPPARD: Thank you, and I appreciate the honest answer. Mrs. Wood has told me she could not do it. I appreciate her honesty with me. Anybody else on the first row?

VENIRE: I wouldn't.

MR. SHEPPARD: That's just too much?

VENIRE: Yeah. That's just too much.

MR. SHEPPARD: I understand. And I appreciate the honest response, Mrs. Mann. Mrs. Mann couldn't do it in that scenario. Next row, again

beginning with Mr. Franke on the left, ending with Frank Burns on the right. If it is proven in the trial of the case that a person has previously been to the penitentiary, punishment range increases. Twenty year max. Anybody who cannot consider that. Yes, sir. Mrs. Franke, and I -- you told me that earlier and I appreciate it. Okay. Who else? Anybody else on that row who now thinks twenty years is even if there is a prior felony that's too much? I don't see any hands. I'm assuming from the silence of that row that the rest of you are okay with the law as I have described it. Going back to the third row, Mrs. Chaloupka on the left ending with Mrs. Pedraza on the right. Mrs. Caballero, I'm going to assume you got a problem with twenty years in that scenario?

VENIRE: Yes. That's too much for him.

MR. SHEPPARD: Okay.

VENIRE: I mean, for the deal.

MR. SHEPPARD: I understand. I really do. And I appreciate your -- I'm not picking on you. I just need to know how you feel about it. Anybody else on that row feel that way? I don't see any hands. I am going to assume from the silence of that row that -- VENIRE: I'm on the fence. I'm on the fence.

MR. SHEPPARD: This is No. 28?

VENIRE: Yeah.

47

MR. SHEPPARD: Mrs. Villarreal?

VENIRE: Uh-huh.

MR. SHEPPARD: And you said you are on the fence?

VENIRE: Yeah. I think it is a lot of years just for that, you know.

MR. SHEPPARD: Okay. I understand. And so my question if you are seated on a jury is there a scenario in which you could see that twenty years would be appropriate provided the State proves the fleeing if there is evidence of a prior felony conviction, could you assess twenty years or could you never do that?

VENIRE: I guess if you could prove it. If you could prove, you know, the case yes, I could.

MR. SHEPPARD: Okay. Well, I'll be back to you here in a minute. Just getting started. Anybody else on that row have a problem? Okay. I am going to go back to the next row beginning with Mr. Mata and ending with Sharon Howard. Mr. Mata, you have already told me you had the issue and you don't need to raise your hand again on this one but I appreciate your earlier --

VENIRE: See, now that you said that he had a previous conviction it changes.

MR. SHEPPARD: Your opinion would change in terms of punishment?

VENIRE: Yeah. Yeah.

MR. SHEPPARD: Okay. And I appreciate that. And I didn't say he had a previous conviction. I said --

VENIRE: Oh, I'm just saying.

MR. SHEPPARD: If it's proven.

VENIRE: Yeah.

MR. SHEPPARD: Okay. And I appreciate your pointing that out. Thank you. I'll make a note of that. And anybody else on that row? Now, Mrs. Jendrzey, I had you down as being real uneasy on ten years. Are you equally uneasy or more uneasy on twenty years?

(R.R.2, pg. 150)

VENIRE: No. If previous conviction I could see that.

MR. SHEPPARD: Okay. Anybody else on that row beginning with Mr. Mata ending with Mrs. Howard who would have a problem with the potential twenty years exposure as I have described it for you? Mr. Williams, tell me how you feel about it. Just too much?

VENIRE: Yeah. That's too much.

MR. SHEPPARD: So, Mr. Williams, not to put words in your mouth but do you feel like you could never give anyone twenty years no matter what the scenario just because they fled and they have a prior felony conviction?

49

MR. DISHER: Objection to the word give.

THE COURT: Mr. Sheppard, I think it's consider and assess.

MR. SHEPPARD: You could never consider and assess; is that fair?

VENIRE: Yes, sir.

MR. SHEPPARD: Okay. Thank you, Mr. Williams. I appreciate your honest answer. Anybody else on that row? Don't be shy. Going back to Mrs. Nunez ending with Kenneth Diebel.

VENIRE: 48.

MR. SHEPPARD: No. 48, Mr. Villarreal. And

(R.R. 2, pg. 151).

I have got you down so many times, Mrs. Villarreal, you are probably good. You are probably good to go home early today. But no. You are doing exactly what you are supposed to do and you are giving me your honest answer and I appreciate it but I'm not going to question you anymore about it, but thank you. Anybody on Mr. Moore's row ending with Mr. Saunders? Anybody feel like, Mr. Moore, how about you?

VENIRE: That is habitual criminal.

MR. SHEPPARD: Well, I haven't gotten to habitual yet. I'm just talking repeat offender. Well, okay. So you are okay with the twenty?

VENIRE: Yes.

50

MR. SHEPPARD: Okay.

VENIRE: Under those circumstances.

MR. SHEPPARD: All right. I don't see any hands up on that row. Going to go back to Mrs. James. Tell Mrs. James if, and the rest of you that if it's proven in the trial of a criminal case that a person has been convicted twice or more on separate and consecutive occasions and been to the penitentiary on separate and consecutive occasions hypothetically, if that's proven the range of punishment now raises to 25 year minimum, life to 99 maximum. That's what is known as the habitual felon statute. Used to be many moons ago it (R.R. 2, pg. 152) was a mandatory life. Legislature in an abundance of goodwill reduced the minimum to 25 which is still a pretty stiff sentence. Okay. So what that means is in a hypothetical case if a person is convicted of third degree felony but is proven in the trial of punishment that -- that they have been twice previously to the pen on separate consecutive occasions now they are faced with 25 to life. 25 to 99 or life. So, Mrs. James, the question is if that scenario were to present itself could you consider and assess the 99 or life?

MR. DISHER: Again, just --

THE COURT: Excuse me.

MR. DISHER: I'm going to --

51

THE COURT: What is your objection, Mr. Disher?

MR. DISHER: The case uses the word consider as being acceptable. It doesn't say consider or assess because assess is the same thing as give. We're not asking the jury to give that punishment. We are only asking could they consider that punishment.

THE COURT: I will sustain your objection to the reference give and the question is you're objecting that the question should be consider?

MR. DISHER: Only. And because it's (R.R.2, pg. 153) substance and similar deal.

THE COURT: Well, earlier you were objecting to consider and assess.

MR. DISHER: No. Consider or assess. Because I'd like assessed on there. Consider part is always correct.

MR. SHEPPARD: Your Honor, I -- voir dired for twenty years on consider and assess and never had a bench reverse it yet.

THE COURT: And his objection because it is vague and I'm not understanding what it is is overruled.

MR. SHEPPARD: So we're still going on. So now we are getting, Mrs. James, I should have told you I wasn't going to make this easy on you. So the high end of the range of punishment in that scenario is life or 99. The low end is 25. Can you consider and assess the high end in

an appropriate case or is the high end always going to be inappropriate in that scenario in your view?

VENIRE: In an appropriate case. That's the key word.

MR. SHEPPARD: That's the key word.

VENIRE: Yes. I could assess that. I'm assuming we're going to know what -- anyway but if it is appropriate --  (R.R. 2, pg. 154)

MR. SHEPPARD: Oh, yeah. Yeah. You'll, you know, nobody is going to ask you to go to the jury room without any information. Okay. Anybody else on the first row? Now do y'all understand the scenario? I know you are not comfortable with it. You have already told me that --

VENIRE: I'm not.

MR. SHEPPARD: But the scenario is if it's in a hypothetical case it's proven that the defendant is what we call a habitual felon pursuant to Texas law, can you consider and assess the high end of the range of punishment in an appropriate case or in your view would it always be inappropriate for you to consider or assess 99 years?

THE COURT: Mr. Sheppard, we have an objection.

MR. DISHER: Again, he's saying consider and assess. That means considering and assess. That's absolutely inappropriate.

THE COURT: Okay. Your objection is overruled.

MR. DISHER: I'd like a running objection.

THE COURT: You have a running objection from this point forward to consider and assess.

MR. DISHER: I'll ask for an instruction to (R.R. 2, pg. 155) disregard.

THE COURT: That's denied.

MR. DISHER: Ask for a mistrial.

THE COURT: That's denied.

MR. DISHER: Thank you.

MR. SHEPPARD: May I, Your Honor?

THE COURT: You may, Mr. Sheppard.

MR. SHEPPARD: Okay. So row one. Anybody on row one who simply could not consider the high end? Mrs. Wood, and I appreciate it. You have told me that as to the twenty years. Mrs. Mann, I'm guessing you wouldn't be able to either?

VENIRE: No.

MR. SHEPPARD: Okay. And I appreciate that. Anybody else? Okay.

THE COURT: You have No. 10 who was the earlier number.

MR. SHEPPARD: No. 10, Your Honor, and I'm sorry, No. 4.

THE COURT: No. 4. Okay. Thank you.

MR. SHEPPARD: Thank you. Going to the second row, Mr. Franke, you are probably uncomfortable with that?

VENIRE: Yes.

MR. SHEPPARD: And you probably could not do  (R.R, 2, pg. 156) it; is that correct?

VENIRE: No.

MR. SHEPPARD: Okay. Thank you for your honest response. Anybody else on that row who could not consider or assess life or 99 if it was proven on the trial of a hypothetical case a person was a habitual felon in the State of Texas? Anybody? Mr. Lopez, you are looking down. Are you okay or thinking about it or?

VENIRE: Thinking about it.

MR. SHEPPARD: Okay. Well, I'll come back to you. You keep thinking about it and I'm going to keep moving down the rows but I'm going to come back and ask you in a minute. Going to the next row beginning with Mrs. Chaloupka, ending with Mrs. Pedraza. Anybody who could not under that factual scenario consider and/or assess the maximum range of punishment? Mrs. Jendrzey, you okay?

VENIRE: Uh-huh.

MR. SHEPPARD: Mrs. Villarreal, I know you are struggling.

VENIRE: If it's appropriate.

MR. SHEPPARD: Okay. You think it could be. There are scenarios in which it could be appropriate?

VENIRE: Uh-huh.

MR. SHEPPARD: Okay. I appreciate that, I (R.R. 2, pg. 157) mean, the honest answer.

VENIRE: Uh-huh.

MR. SHEPPARD: Anybody else? Okay. Mr. Mata and Mrs. Howard's row is where we are now. And that's got Mr. Mata, Mrs. Jendrzey, Mr. Williams, Mrs. Doerhman and so forth. Anybody on that row who could not consider or assess the high end of the range of punishment if it's proven in the trial of a hypothetical case a person is a habitual felon under the laws of Texas? Anybody? Mr. Mata, how do you feel about the habitual?

VENIRE: I'm good.

MR. SHEPPARD: Okay. Mrs. Jendrzey, what do you think?

VENIRE: Yes.

MR. SHEPPARD: Mr. Williams, how are you feeling about it?

VENIRE: I mean, that's a bitch. That's a bitch right there.

MR. SHEPPARD: Okay. And I appreciate the honest responses. Anybody else on that row have different feeling? I'm going to go back to speed up and

go just to the rest of the panel as a whole. Back all the way to Mr. Moore's row ending with Christopher Saunders and Sarah Nunez's row ending with Kenneth (R.R. 2, pg. 158) Diebel. Anybody who could not consider and in an appropriate case assess the high end of the range of punishment if it's proven in the trial of a hypothetical case that a person fleeing from the officer was also a habitual felon in the state laws of Texas? Anybody who feels they could not do that? In principle? Okay. Take it from the silence of the rest of the panel then that you can except for those of you who have raised your hands and talked to me about it earlier and I appreciate that very much that if you haven't raised your hands and discussed it with me that you can follow the law as I described it for you and I appreciate your willingness to do so.

*Legal Background:*

The State has repeatedly requested the venire commit to assess or give a life sentence to Appellant over the numerous objections and running objection of trial counsel for Appellant. In order to analyze the proprietary of these actions we should probably start with ***Standefer v. State****, 59 S.W.3d 177 (Tex.Crim.App. 2001).* ***Standefer*** *at 179* states, "An attorney cannot attempt to bind or commit a prospective juror to a verdict based on a

hypothetical set of facts. ***Allridge v. State***, *850 S.W.2d 471, 480 (Tex.Crim.App.1991).*" ***Standefer*** *at 179* goes on to explain, "Commitment questions are those that commit a prospective juror to resolve, or to refrain from resolving, an issue a certain way after learning a particular fact." Standefer at 179-180 further illustrates, "Can you assure us that the knowledge of those facts would not prevent you or substantially impair you in considering a life sentence in such a case?" "This is not a proper question." ***Standefer*** *at 180.*

Not all commitment questions are improper. ***Standefer*** *at 181.* For example, questions concerning a juror's ability to consider the full range of punishment for a particular offense meet the above definition of commitment questions but are nevertheless proper. ***Standefer*** *at 181*and ***Briddle v. State***, *742 S.W.2d 379, 384 (Tex.Crim.App. 1987);* ***Wyle v. State***, *777 S.W.2d 709, 716-717 (Tex.Crim.App.1989).* …jurors are required to follow the law enacted by the Legislature. So a prospective juror must be able to consider the full range of punishment provided for an offense or be challengeable for cause. ***Standefer*** *at 181* and ***Johnson v. State***, *982 S.W.2d 403, 405 (Tex.Crim.App. 1998).*

The distinguishing factor is that the law requires jurors to make certain types of commitments. When the law requires a certain type of

commitment from jurors, the attorneys may ask the prospective jurors whether they can follow the law in that regard. ***Standefer*** *at 181.*

However, where the law does not require the commitment, a commitment question is invariably improper. ***Standefer*** *at 181.*

The proper commitment question regarding punishment may be found at ***Garcia v. State***, *919 S.W.2d 370, 389 (Tex.Crim.App. 1994)* wherein it states, "A prospective juror who is unable to consider the full range of punishment may be challenged for cause under the standards established in ***Wainwright v. Witt***, *469 U.S. 412 (1985)* and ***Morgan v. Illinois***, *504 U.S. 719 (1992).* ***See*** also ***Martinez v. State***, *588 S.W.2d 954, 955 n. 1 (Tex.Crim.App. 1979)*; ***Fearance v. State***, *771 S.W. 2d 486 (Tex.Crim.App. 1988).*"

Examining the words consider, assess, and give and distinguishing one from the other, reference is made to Black's Law Dictionary, Fifth Edition.

Consider is defined therein as, "To fix the mind on, with a view to careful examination; to examine, to inspect. To deliberate about and ponder over. To entertain or give heed to."

Assess is defined therein in relevant part as, "To ascertain; fix the value of. To fix the amount of damages or the value of the thing to be ascertained."

Give judgment is defined therein as, "To render, pronounce, or declare the judgment of the court in an action at law."

*Application of the law to the facts:*

By repeatedly asking improper commitment questions of giving or assessing a life sentence regarding the punishment range issue rather than considering the full punishment range, the State certainly tainted and prejudiced the venire against Appellant and contributed to the award of a life sentence against the Appellant. The State ignored prevailing case law as outlined in ***Standefer v. State***, *59 S.W.3d 177 (Tex.Crim.App. 2001).* ***Standefer*** *at 179* states, "An attorney cannot attempt to bind or commit a prospective juror to a verdict based on a hypothetical set of facts. ***Allridge v. State***, *850 S.W.2d 471, 480 (Tex.Crim.App.1991).*" ***Standefer*** *at 179* goes on to explain, "Commitment questions are those that commit a prospective juror to resolve, or to refrain from resolving, an issue a certain way after learning a particular fact." Standefer at 179-180 further illustrates, "Can you assure us that the knowledge of those facts would not prevent you or

substantially impair you in considering a life sentence in such a case?" "This is not a proper question." ***Standefer*** *at 180*.

Not all commitment questions are improper. ***Standefer*** *at 181*. For example, questions concerning a juror's ability to consider the full range of punishment for a particular offense meet the above definition of commitment questions but are nevertheless proper. ***Standefer*** *at 181*and ***Briddle v. State***, *742 S.W.2d 379, 384 (Tex.Crim.App. 1987);* ***Wyle v. State***, *777 S.W.2d 709, 716-717 (Tex.Crim.App.1989).* …jurors are required to follow the law enacted by the Legislature. So a prospective juror must be able to consider the full range of punishment provided for an offense or be challengeable for cause. ***Standefer*** *at 181* and ***Johnson v. State***, *982 S.W.2d 403, 405 (Tex.Crim.App. 1998).*

The distinguishing factor is that the law requires jurors to make certain types of commitments. When the law requires a certain type of commitment from jurors, the attorneys may ask the prospective jurors whether they can follow the law in that regard. ***Standefer*** *at 181*.

However, where the law does not require the commitment, a commitment question is invariably improper. ***Standefer*** *at 181*.

The proper commitment question regarding punishment may be found at ***Garcia v. State***, *919 S.W.2d 370, 389 (Tex.Crim.App. 1994)* wherein it

states, "A prospective juror who is unable to consider the full range of punishment may be challenged for cause under the standards established in ***Wainwright v. Witt***, *469 U.S. 412 (1985)* and ***Morgan v. Illinois***, *504 U.S. 719 (1992).* ***See*** *also* ***Martinez v. State***, *588 S.W.2d 954, 955 n. 1 (Tex.Crim.App. 1979)*; ***Fearance v. State***, *771 S.W. 2d 486 (Tex.Crim.App. 1988)."*

Examining the words consider, assess, and give and distinguishing one from the other, reference is made to Black's Law Dictionary, Fifth Edition.

Consider is defined therein as, "To fix the mind on, with a view to careful examination; to examine, to inspect. To deliberate about and ponder over. To entertain or give heed to."

Assess is defined therein in relevant part as, "To ascertain; fix the value of. To fix the amount of damages or the value of the thing to be ascertained."

Give judgment is defined therein as, "To render, pronounce, or declare the judgment of the court in an action at law."

*Harm Analysis:*

The State tainted the entire venire but a small doubt to the taint still existed with respect to a few venirepersons after voir dire. To be certain the taint was complete, the State was able to exclude 'for cause' the following venirepersons who would consider the full punishment range but not agree to assess or give a life sentence.

Although Venire No. 11 could consider the full punishment range he was stricken by State's motion over Appellant's objection.

"MR. SHEPPARD: Oh, okay. And as far as the habitual felon range, you know, for fleeing in a vehicle, if you have two prior felonies you could go for life or 99 even though what you are charged with is fleeing in a vehicle. Could you ever consider or assess the maximum range of 99 years?

VENIRE NO. 11: I don't know. That's throwing away somebody else's life right there.

MR. DISHER: And I'm not asking you to do it in this case but I'm saying could you in an appropriate case do that or do you think you could never do that?

VENIRE NO. 11: I don't think I could do that.

MR. SHEPPARD: Okay. All right, sir.

THE COURT: Very well. Thank you. I'm sorry. Did you have another question? Go ahead.

MR. DISHER: Yes. Forgetting the word assess for a minute, you know the difference between assess and consider?

VENIRE NO. 11: I'm going to figure it out today.

MR. DISHER: Considering is what you think about and assess actually means do, commit to do. Just in your mind could you at least give some serious thought to the full punishment range, two priors, could be serious, could not be so serious. Anywhere from 25 to 99 or life. Could you not consider the entire punishment range?

VENIRE NO. 11: I could consider the whole range but I wouldn't -- I'm not real on that -- on the life side, you know what I'm saying.

MR. DISHER: But you could -- you can consider it since it is the law as the judge will instruct you?

VENIRE NO. 11: Yes.

MR. DISHER: Okay. I don't have any further questions.

THE COURT: Okay. Thank you, sir. If you wish to take a break you may do so.

MR. SHEPPARD: I move to strike, Your Honor.

MR. DISHER: Object.

THE COURT: Granted."

(R.R. 2, pgs. 204-205)

Although Venire No. 33 could consider the full punishment range he was stricken by State's motion over Appellant's objection.

MR. SHEPPARD: "Yes, sir. I'll be brief.

Mr. Williams, we're just trying to recall what you told us about punishment. My recollection is that when I asked the question you said if a person flees from an officer and if it's proven in trial that they have a prior felony conviction, they have been to the pen before, that you still think twenty years as a maximum is too -- it's too much?

VENIRE NO. 33: Yes, sir.

MR. SHEPPARD: And you could not consider or assess twenty years?

VENIRE NO. 33: No, sir.

MR. SHEPPARD: In that scenario; is that fair?

VENIRE NO. 33: Yes, sir.

MR. SHEPPARD: Okay. And I appreciate the honest response, and Mr. Disher may have some questions.

THE COURT: Mr. Disher?

MR. DISHER: Considering a little bit different language do you know what consider means?

VENIRE NO. 33: Yes, sir.

THE COURT: What does it mean?

VENIRE NO. 33: Consider?

MR. DISHER: Yeah.

VENIRE NO. 33: Well, like something like think about it or.

MR. DISHER: To think about it?

VENIRE NO. 33: Yeah.

MR. DISHER: Do you know what the word assess means?

VENIRE NO. 33: Assess.

MR. DISHER: Assess. Like to give. Does that make sense, to give?

VENIRE NO. 33: Yeah.

MR. DISHER: If we -- when I ask -- I'm not asking you to make a definite commitment here. I'm asking you to can you have an open mind and wait until the State puts on its evidence. They might have a --they might have a multiple murderer and then gets this other and, you know, he may have several murder convictions and then this adds on.

Could you consider a life sentence or if they just had one murder case and gets convicted for this evading, would you consider twenty years? I'm not saying that is the case but --

VENIRE NO. 33: Yeah. I understand what you

are saying. Yeah. I mean, I -- if he's had priors and,

you know, yeah.

MR. DISHER: So until you have heard the entire case the evidence all we're

asking you do is to be able to keep your mind open and consider the full

range of punishment.

VENIRE NO. 33: Yes, sir.

THE COURT: You could do that?

VENIRE NO. 33: Yes, sir.

MR. DISHER: Thank you.

MR. SHEPPARD: I have no further questions.

THE COURT: Thank you. Thank you, Mr. Williams. If you want to take a

break right now you can.

VENIRE NO. 33: Thank you.

THE COURT: Yes, sir.

MR. SHEPPARD: Your Honor, the State would move on Mr. Williams.

MR. DISHER: Objection. I believe he's following the law.

MR. SHEPPARD: Your Honor, he's told me two different times that he

cannot consider and in an appropriate case assess twenty years in that

scenario. Just asking him can you keep an open mind and consider

everything doesn't get you where you need to be. I mean, I'm entitled to a juror who can consider it and in an appropriate case assess it. That's the language.

THE COURT: Mr. Disher, your objection?

MR. DISHER: I learned that about ten years ago at trial in Harris County that do not ask about giving, assessing. Because I tried it. I got stomped on and they had the case. You have to ask consider and that's it.

THE COURT: Yeah.

MR. DISHER: I mean, that's it. He's gone beyond that.

THE COURT: Okay. Well, he said he couldn't consider it and he said he could consider it. I'm going to grant the motion to strike. No. 33 is stricken."

(R.R. 2, pgs. 218-221).

Never did the State ask the consider question but asked consider and/or assess questions when questioning Venire person No. 33. The State kept asking compound consider/assess questions regarding punishment and never asked a simple consider question. (R.R. 2, pgs. 218-221).

"MR. DISHER: No, Your Honor. I think we got – We had two strikes that we didn't like and - -

THE COURT: I'm sorry. You had what?

MR. DISHER: We had two strikes that we didn't like.

THE COURT:  Two challenges that you disagreed that and you feel that I have committed error?

MR. DISHER:  Right."  (R.R. 2, pg. 225).

## POINT NUMBER TWO RESTATED

THE STATE AT ITS FINAL ARGUMENT ON GUILT/INNOCENCE

URGED THE JURY TO BE THE CONSCIENCE OF THE  COMMUNITY

(R.R. 3, pg. 122)

*Relevant Facts*:

So we ask that as a conscience of our community that you take this duty very

--

MR. DISHER: Objection, Your Honor.

THE COURT: Nature of your objection, Mr. Disher?

MR. DISHER: A case from the Court of Criminal Appeals. I highlighted it

for you. There is an objection to using community as an improper argument.

What the community desires. What the community desires.

MR. SHEPPARD: That's not the same thing.  May I approach, Your Honor?

THE COURT: You may.

(Bench conference on the record.)

THE COURT: Mr. Sheppard?

MR. SHEPPARD: Your Honor, that's not what this case says. What this case

says is that you can't say the people in this county expect you to convict this

guy because he's a well known criminal and everybody knows about this case. Juries have always been referred to as the conscience of their community. I refer to them as the conscience of the community every trial I have tried and so does Bobby Bell and so does every other prosecutor in the district. They are the conscience of the community. It's not the same thing and it's an inapt --

MR. DISHER: Here it is right here. There's three cases on that. One is the Cox case, the 247.

MR. SHEPPARD: But what do they stand for?

MR. DISHER: The community is asking the jury to convict the Defendant.

MR. SHEPPARD: That's not the same thing.

MR. DISHER: The community would want the Defendant sent to prison if people knew what he had done.

MR. SHEPPARD: That's not the same thing.

MR. DISHER: Argument designed to induce conviction or a particular punishment to satisfy the community's desires. All these things objectionable and that last one is Cortez which I have handed the court and the Prosecution.

THE COURT: Well, Mr. Disher, what I understand -- I understand these cases that you have cited, but all that Counsel has said so far is as the

conscience of the community, you. He has not said your community wants you to do anything.

MR. DISHER: Well, they -- looks like they're --

THE COURT: He has simply acknowledged that he is arguing to them that they represent the community. That's not improper. So I'm noting your objection but I'm overruling your objection. Now if his argument gets into the proscribed areas then I'll entertain a subsequent objection.

MR. SHEPPARD: Thank you, Your Honor.

MR. DISHER: Can I make one further, Your Honor, objection?

THE COURT: Yes.

MR. DISHER: Says whenever prosecuting attorney tells the jury that the people of the community when a crime was committed and wants the accused person convicted or assessed a particular punishment, he's not only injecting a new and harmful effect of evidence which had no place in the original was conducting his case along lines never contemplated by the framers of our Constitution.

THE COURT: I agree with that, and if he says something like that that will be subject to objection.

MR. DISHER: Thank you.

THE COURT: Mr. Manning, you may continue.

(End bench conference.)

MR. MANNING: Thank you for your patience. As members of the community we ask that you just pursue your civic duty here today and we request that the jury return a verdict form of number one. Thank you for your time, and we really appreciate your civic duty. Thank you.
(R.R. 3, pgs. 123-126).

*Legal Background:*

"Jury argument by a prosecuting attorney that is designed to induce the jury to convict the defendant or assess him a particular punishment because "the people" desire such is improper jury argument. This type jury argument is manifestly improper, harmful and prejudicial to the defendant and will not be countenanced by this Court. Whenever a prosecuting attorney tells the people of the community where the crime was committed wants an accused person convicted or assessed a particular punishment, he is not only injecting a new and harmful fact into evidence, which had no place there originally, but he is conducting his case along lines never contemplated by the framers of our constitution." ***Cortez v. State****, 683 S.W.2d 419, 420-421 (Tex.Crim.App. 1984).*

"Complaint is made of the argument of counsel for the State wherein he said: 'The people of De Soto are asking the jury to convict this defendant.' The language is quite similar to that which has caused the reversal of several convictions. *See **Porter v. State**, 226 S.W.2d 435, 436-437 (Tex.Crim.App. 1950)*, ***Peysen v. State**, 124 S.W.2d 137, 138-139 ( Tex.Crim.App. 1939)."* ***Cox v. State**, 247 S.W.2d 262, 263 (Tex.Crim.App. 1951).*

"The quoted positive statement as to the request of the people of De Soto cannot be brushed aside as a mere reference. They had voted for prohibition years ago. They did not know this defendant. They were not called as witnesses on the 247 S.W.2d 264 trial. To sanction such argument would overturn every case, probably a hundred, on the subject. We have a law against murder with a death penalty. It was passed by the Legislature, representatives of the people. If a prosecutor can tell a jury what the people want, why not let them prescribe the penalty-even death for murder? If the people are to pass upon the guilt, and if their expression by ballot is evidence of their desire to have any defendant convicted, then trials are not necessary. Just bring a charge and assess the penalty. Appellant's motion for rehearing is granted; the order of affirmance is set

aside, and the judgment of the trial court is now reversed and the cause remanded." *Cox v. State*, 247 S.W.2d 262, 263-264 (Tex.Crim.App. 1951).

"We have frequently held that a statement by the prosecuting attorney as to what the people are expecting and what the people want brings before the jury a fact that was not heard from the witness box and is reversible error. We have called attention many times to the distinguishment to be made between an assertion as to what the people think, what they say, or what they want, and an assertion of the opinion of the prosecuting attorney as to what they are 'entitled' to say, or think, or want. In the face of the explanation so frequently made, there **[154 Tex.Crim. 255]** still seems to be confusion in the minds of some as to what is proper argument in this respect. We think the bill shows error requiring a reversal of the case because the attorney made an assertion of a fact which is calculated to and probably did have a damaging influence before the jury. *Hazzard v. State*, *111 Tex.Cr.R. 539, 15 S.W.2d 638*; *Jones v. State*, *Tex.Cr.App.,* 205 *S.W.2d 590* and Id., *Tex.Cr.App., 220 S.W.2d 156*; Branch's Ann.P.C. Sec. 364; and 12 Texas Digest, Criminal Law, k723." *Porter at 436-437*.

"By bill of exception number nine, appellant complains of the following remarks by the prosecuting attorney in his opening argument to the jury: "The defendant is by his confession shown to be guilty of a most

cruel and horrible crime and one which in my judgment deserves the extreme penalty of the law. You said you had no scruples about inflicting the death penalty in a proper case and I tell you the people of Matagorda and Jackson Counties are expecting you to do your duty in this case and assess the defendant's punishment at death." Appellant promptly objected to this argument and requested the court to instruct the jury not to consider the statement as to what the people of Matagorda and Jackson Counties were expecting at their hands. The objection was overruled and appellant reserved a bill of exception. We think the learned trial court fell into error in overruling this objection. We have searched the record with much care but are unable to discover just how the learned counsel ascertained that the people of Matagorda and Jackson Counties were expecting the jury to assess the defendant's punishment at death. What the people of these counties expected at the hands of the jury should not have been used as a vehicle upon which to convey the appellant to the electric chair. We are of the opinion that an appeal to the jury of this nature in order to secure a conviction was wrong, and this court will not sanction a verdict obtained by such methods. The jury should decide cases, not upon what the public expected them to do, but solely upon the weight and credibility of the

evidence adduced upon the trial. The argument complained of was a departure from the record and an unsworn statement upon the part of the prosecuting attorney of what the people of Jackson and Matagorda Counties expected. It placed before the jury a fact not in evidence. Even if such was true, it ought not to be considered by them in determining the guilt of the party upon trial or the punishment to be assessed against him. In support of what we have said, see ***Crawford v. State***,*. 15 Tex App. 501*; ***Woolly v. State***, *93 Tex.Cr.R. 384, 247 S.W. 865*; ***Hazzard v. State***, *111 Tex.Cr.R. 539, 15 S.W.2d 638*; ***White v. State***, *Tex.Cr.App., 117 S.W.2d 450*; ***Rodriguez v. State***, *Tex.Cr.App., 119 S.W.2d 1048*; ***Edwards v. State***, *127 Tex.Cr.R. 386, 77 S.W.2d 241.*" ***Peysen*** *at 138-139.*

*Application of the law to the facts:*

The State was adamant on convincing the jury during its argument on guilt/innocence it was their duty as members of the community to just pursue their civic duty and return a verdict of guilty. Nowhere was evidence produced to show that such was their duty. The attorney for the State made an assertion of fact which is calculated and probably did have a damaging influence before the jury. This was clearly prejudicial and demands a reversal.

Per the cases herein cited, the above type of error requires reversal but without the requirement of any harm analysis.

# **POINT NUMBER THREE RESTATED**

## THE STATE'S WITNESS, CARL BOWEN, DURING THE

## GUILT/INNOCENCE PHASE OF THE TRIAL, STATED THAT

## APPELLANT WAS ON PAROLE (R.R. 3, pg. 88)

*Relevant Facts*:

Q. Well, if I can just interrupt you a little bit, Sergeant. What was the Defendant running from?

A. The Defendant was running from a Yoakum police officer.

Q. And did he tell you that he saw cops chasing him?

A. Yes. He did. He said, man, I saw him behind me and I didn't want to stop. I'm on parole and I didn't want to go back to jail.

MR. DISHER: Objection.

THE COURT: Yes.

MR. DISHER: Claiming he just said that my client was on parole. Violation of 404(b) and 403.

THE COURT: Okay. Approach the bench.

(Bench conference on the record.)

THE COURT: What was your objection?

MR. DISHER: He's not supposed to talk about parole. I thought he was warned about that. Did you warn him about that?

THE COURT: Well, he didn't solicit that information.

MR. DISHER: I know, but he was supposed to have been warned about it not to say that.

MR. SHEPPARD: By the same token, it's not error because it's -- that's why he ran. He's telling us I ran because I'm on parole. The jury is actually entitled to hear that.

MR. DISHER: No, they're not.

MR. SHEPPARD: Sure they are.

MR. DISHER: Courts of Appeals don't like that kind of thing.

THE COURT: Well, we'll find out.

MR. SHEPPARD: If he ran because he – he said I ran because I had a pound of cocaine in the trunk, that's admissible. Okay. That's why you ran. Now we know as a jury.

THE COURT: He said he didn't want to go to jail.

MR. DISHER: That's fine but he also said he was on parole at the time. I want that stricken.

THE COURT: Okay.

MR. DISHER: Please.

THE COURT: I'm -- what I'm going to do is I am going to --

MR. DISHER: Instructions.

THE COURT: -- going to sustain your objection.

MR. DISHER: Thank you.

THE COURT: -- on a limited basis to the reference to the witness' statement about parole.

MR. DISHER: Okay. Well then --

THE COURT: I am going to direct the jury to disregard --

MR. DISHER: Thank you.

THE COURT: -- his statement with parole.

MR. DISHER: And I'll have to do one other thing just to preserve error, Your Honor.  I don't know what your ruling is going to be. I'll ask for a mistrial.

THE COURT: That's fine. That's fine.

(Bench conference ends.)

THE COURT: All right. Ladies and Gentlemen, I'm going to sustain Mr. Disher's objection with respect to the witness' statement about being on parole. You are to disregard the witness' comment about the Defendant's statement about being on parole. That is not to be considered by you for any purpose in your deliberations and it is not to be considered as evidence of any fact. It's not to be considered for any purpose.

Mr. Disher, do you have a further motion?

MR. DISHER: Yes, Your Honor. I – first I'd like to thank the court for the first two rulings, but based on case law and appellate procedure, in order to preserve error I have to ask the court for a mistrial at this time.

THE COURT: And that motion is denied.

MR. DISHER: Thank you, Your Honor.

(R.R. 3, pgs. 88-91).

*Legal Background:*

Appellant's objection to the TEX.R.EVID 404(b) violation of State's witness, Officer Carl Bowen, informing the jury of the parole status of Appellant was sustained by the Court. (R.R. 3, pg. 91). Furthermore the Court gave a requested curative instruction to the jury. (R.R. 3, pg. 91). However, Appellant's motion for mistrial was denied by the Court. (R.R. 3, pg. 91). ***Stine v. State**, 300 S.W.3d 52, 59 (Tex.App.—Texarkana 2009, **pet. dism'd**)* is instructive concerning whether an instruction is actually curative. The Court stated, "While we employ a case-by-case analysis when deciding whether an instruction is curative, there are several nonexhaustive, nonexclusive factors this Court has adopted from its review of numerous Texas Court of Criminal Appeals cases. Included among the factors we consider in this case are: (1) the weight of other evidence supporting the decision; (2) nature and form of the question; (3) whether other evidence

82

concerning the same question has been admitted; (4) the particular instruction given; and (5) the harm to the accused as measured by the severity of the sentence."

*Application of the law to the facts:*

In ***Stine*** factor (1), the weight of other evidence supporting the decision, Appellant according to the State, made a voluntary custodial statement admitting to the elements of the indictment but the State through its police officer witness interjected the parole issue to the jury. (R.R. 3, pg. 88).

In ***Stine*** factor (2), the nature and form of the question is "Q. And did he tell you that he saw cops chasing him?

A. Yes. He did. He said, man, I saw him behind me

and I didn't want to stop. I'm on parole and I didn't want to go back to jail."

(R.R. 3, pg. 88). The State by an experienced witness, a police officer, managed to give an expansive answer to violate the right of Appellant to be tried on the merits of the instant case and not extraneous ones.

In ***Stine*** factor (3), whether other evidence concerning the same question has been admitted, the State was trying to ascertain why Appellant ran (R.R. 3, pg. 89) although the reason does not appear to be an element of the indictment. (C.R. Volume 1, pgs. 7-8). The State asked its question

which was answered but the jury was admonished to ignore the parole part of the answer.  (R.R. 3, pg. 91).

In ***Stine*** factor (4),  the particular instruction given,  THE COURT: told the jury, "All right. Ladies and Gentlemen, I'm going to sustain Mr. Disher's objection with respect to the witness' statement about being on parole. You are to disregard the witness' comment about the Defendant's statement about being on parole. That is not to be considered by you for any purpose in your deliberations and it is not to be considered as evidence of any fact. It's not to be considered for any purpose." Appellant believes the Court did a good job trying to cure the objectionable remark by the State's police officer concerning Appellant's parole status.  But once in the jurors' mind, how do you erase it?  The proverbial cat's out of the bag.

In ***Stine*** factor (5), the harm to the accused as measured by the severity of the sentence; the sentence was the maximum possible set at imprisonment for life.  (C.R. Volume 1, pg. 100).

## **PRAYER FOR RELIEF**

For the above reasons and facts, Appellant prays the Court find that it should reverse the judgment below and remand the case for a new trial in the interest of justice.

Respectfully submitted,

/S/ *David Alan Disher*

_____
David Alan Disher, TBC # 05895600
Attorney at Law
1167 FM 2144
Schulenburg, Texas
Phone number: 979-263-5174
Fax number: 979-263-5183

## CERTIFICATE OF COMPLIANCE

I certify, pursuant to TEX. R. APP. P. 9.4i (2) (B) and TEX. R. APP. P. 9.4i (3) that a copy of this document contains 12841 words (containing all parts of the document except as excluded by TEX. R. APP. P. 9.4i (1).

/s/ *David Alan Disher*

_____
David Alan Disher, TBC # 05895600
Attorney at Law
1167 FM 2144
Schulenburg, Texas
Phone number:  979-263-5174
Fax number: 979-263-5183

## CERTIFICATE OF SERVICE

I certify that the original foregoing Appellant's Brief has been served via e-filing

Ms. Dorian E. Ramirez, Clerk
Court of Appeals,
13th District, 10th Floor
 Nueces County Courthouse
901 Leopard
Corpus Christi, Texas 78401;

and a copy of the Appellant's Brief has been served on the following persons by personal delivery or via postpaid, U.S. mail, return receipt requested or via Fax, to

Mr. Michael Sheppard
DeWitt County Criminal District Attorney
Office Of The DeWitt County Criminal District Attorney's Office
DeWitt County Courthouse
307 N. Gonzales
3rd Floor
Cuero, Texas  77954, and

Jose Barbontin Salas, Appellant, at his last known addresses
as follows:
TDC#1979973
Stiles Unit
3060 FM 3514
Beaumont, Texas  77705


By postpaid, U.S. mail, return receipt requested on this the 14th day of July 2015.

/S/ *David Alan Disher*

_____

David Alan Disher
Attorney for the Appellant